1

```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff,             )
                                 )
          v.                     )  No. 19 CR 00486
                                 )
ROBERT ANTHONY HAAS,             )  Chicago, Illinois
                                 )  July 28, 2020
          Defendant.             )  11:07 a.m.

              TRANSCRIPT OF TELEPHONIC PROCEEDINGS

              BEFORE THE HONORABLE EDMOND E. CHANG

APPEARANCES:

For the Plaintiff:         HON. JOHN R. LAUSCH, JR.
                           United States Attorney
                           BY:  MS. ERIN E. KELLY
                                MR. BARRY JONAS
                           Assistant United States Attorneys
                           219 South Dearborn Street, Suite 500
                           Chicago, Illinois 60604
                           (312) 353-5300

For the Defendant:         MR. ROBERT ANTHONY HAAS,
                           Pro se;

For the Defendant as       BEDI & SINGER, LLP
standby counsel:           BY:  MS. DENA M. SINGER
                           53 West Jackson Boulevard
                           Suite 1505
                           Chicago, Illinois 60604
                           (312) 525-2017


Court Reporter:            Judith A. Walsh, CSR, RDR, F/CRR
                           Official Court Reporter
                           219 South Dearborn Street, Room 2118
                           Chicago, Illinois 60604
                           (312) 702-8865
                           judith_walsh@ilnd.uscourts.gov
```

1      (Proceedings heard telephonically:)
2           THE CLERK:  19 CR 486, USA versus Robert Anthony
3  Haas.
4           THE COURT:  All right.  This is Judge Chang.  Just to
5  get appearances, let me ask the government to put their
6  appearance on the record first.
7           MS. KELLY:  Erin Kelly for the United States.
8           MR. JONAS:  Barry Jonas for the United States.
9           THE COURT:  All right.  And then, Ms. Singer, can you
10 announce your appearance?
11          MS. SINGER:  Standby counsel, Dena Singer.
12          THE COURT:  Okay.  And then, Mr. Haas, can you just
13 state your first and last name, please?
14          THE DEFENDANT:  Robert Haas.
15          THE COURT:  All right.  Good morning.
16          THE DEFENDANT:  Good morning, your Honor.
17          THE COURT:  All right.  I called this -- good
18 morning.  I called this status hearing because, Mr. Haas, as
19 you're aware, Ms. Singer who is the standby counsel has
20 expressed some concerns about appearing in person during the
21 trial.  And so I want to -- and I realize that you and
22 Ms. Singer had talked to one another about this, but I first
23 want to ask Ms. Singer if she could present her concerns.
24          And if you have any specific ones, Ms. Singer, in
25 terms of perhaps issues that are specific to you that you

1    would rather have described under seal, I'd be happy to have
2    us put into an under-seal proceeding so that we're removed
3    from the public record.  Do you prefer to do that, Ms. Singer?
4            MS. SINGER:  Your Honor, I can ask to do that if we
5    get -- if we need to.
6            THE COURT:  Okay.
7            MS. SINGER:  I think for now, I can relay to the
8    Court my concerns.  After I received the post-pandemic jury
9    trial plan dated 7/22/20 Excerpts from the Court, after
10   reviewing it and specifically the portion that deals with -- I
11   think it's the last page that your Honor sent
12   electronically -- "mechanisms for counsel/client consultations
13   with sufficient distancing, particularly in criminal cases
14   with the defendant in custody, should be discussed and
15   resolved prior to trial."
16           This was not discussed at our pretrial conference.
17   And once I received your Honor's email, as I indicated in my
18   motion and as I've discussed with Mr. Haas as well, I do not
19   feel safe sitting at counsel table with the rise in numbers of
20   COVID-19 and the easily transmittable virus that this is.
21   Basically, the Court has proposed in this post-pandemic jury
22   trial plan the written communication of passing notes or for
23   me to go in the lockup.
24           I am not -- I do not feel safe doing that.  That
25   lockup, I have been in that lockup.  That lockup is small.  It

1  is -- has no ventilation. It has no windows. And it really
2  defies what the CDC is recommending for precautions to be
3  taken in light of COVID.
4  　　　　In addition, the passing of notes, I'm not sure
5  conceivably how that works when in order to pass a note, I
6  have to be within arm's distance of Mr. Haas. And as to no
7  fault to Mr. Haas at all is incarcerated at the MCC, where I'm
8  not going to go into with the Court as I'm sure the Court is
9  already aware of the easily transmittable of the virus within
10 the jail. I not only am concerned about myself and my own
11 safety and health as well as that of my family.
12 　　　　It has been indicated by an email that the Court sent
13 that Mr. Haas will be in quarantine for the trial after each
14 day. That has never been fleshed out what that means for me
15 or for Mr. Haas except that he'll still have access to a
16 computer.
17 　　　　Mr. Haas still has to come into contact with guards,
18 with marshals that are transporting him. It looks like based
19 on the procedures that this post-pandemic jury trial plan lays
20 out that we're looking at having approximately 20 jurors at a
21 time plus everybody else that's in the courtroom as well.
22 　　　　Mr. Haas, being at the MCC, it's my understanding --
23 and he can obviously correct me if I'm mistaken -- is
24 currently in a dorm-style setting. Nobody is six feet apart
25 in that dorm-style setting. He has not been in quarantine for

1  the past 14 days.  So while he has to be in quarantine after
2  each day, and then it sounds like if Mr. Haas was to be found
3  guilty, for 14 days after the trial, that in no way solves my
4  concerns for what's going on for the first day of trial and
5  thereafter.  I am not comfortable sitting at counsel table
6  which is barely six feet apart with just a mask on.
7         So I did propose alternatives for the Court to
8  consider.  Another alternative that I didn't put in my motion
9  but that I have seen is the use of a chat function by
10 computer, that Mr. Haas and I could be chatting that way if he
11 has questions.  This isn't a scenario where Mr. Haas can tap
12 me on the shoulder and ask a question or somebody can whisper
13 something to another person.  I cannot put myself in that
14 situation, your Honor.
15        I have spoken with Mr. Haas about this.  And I did
16 file that supplement as your Honor requested, but based on
17 what we know and the numbers rising currently and that part of
18 the jurors would be coming from a district that has now been
19 on the rise and is under a health warning from the governor, I
20 don't feel safe.
21        THE DEFENDANT:  Can I speak for a second, your Honor?
22        THE COURT:  Yes, sure.  Let me -- before you do that,
23 Mr. Haas, let me just interpose one thing or a couple things.
24        One is the headset proposal I think actually is
25 feasible, Ms. Singer.  So I might be able to make that work.

1 And I'm more concerned about the phone-in proposal which is --
2 I think it would create an obstacle in terms of your ability
3 to see witnesses and exhibits.
4     And, of course, just taking a step back, I understand
5 all of your concerns overall. I don't think we are out of
6 step with the CDC guidelines in any way in the sense that the
7 guidelines say that if we cannot distance, then we ought to be
8 masked. We are -- we're both distancing and masking. You
9 mentioned the lockup situation. That was only if the
10 defendant would then stand at the furthest point in the lockup
11 cell. But these are just alternatives.
12     So the more specific issue about the attorney-client
13 conferrals, I think I can make the headset situation work.
14 I've been in discussion with Systems on that. And you
15 mentioned the chat computer. That might be another method if
16 we can't get the headsets to work. But the phone situation, I
17 don't think that will be really effective in any way.
18     If you are not comfortable with the headset solution
19 then -- because I don't want to require a standby counsel to
20 put herself in any situation that you feel unsafe in -- then
21 I'll certainly consider the withdrawal. But I do want to hear
22 from Mr. Haas, and I do want to let you know that the headset
23 proposal, I think I can make that work.
24     So Mr. Haas, go ahead.
25     THE DEFENDANT: Well, first of all, I'd like to say

1    that I think it's kind of a violation of my rights not having
2    my counsel next to me in person so I can actually whisper
3    something to her that I need said instead of broadcasting it
4    across open airwaves and also the fact that it's kind of
5    alienating me having her away from me like I'm tainted or have
6    some sort of a disease myself.
7            The major factor I'd really like to point out is the
8    fact that you guys labeled these instructions as "post-
9    pandemic."  I'd like to know when post-pandemic is.  Is that
10   going to be in two years or three years or when they come up
11   with a cure?  Because the numbers are on a rise.  This is not
12   post-pandemic.  That is sophistry, is what that is.  There is
13   no post-pandemic anywhere in sight.  The numbers are rising.
14           So I don't think the Court is fit to have anyone in a
15   room, especially considering that this is a microscopic
16   organism, and a dust mask will not stop it.  If one person in
17   that courtroom sneezes, the whole room is, it's like a nuclear
18   bomb has just been dropped in the room, and everybody is
19   liable to catch it.
20           THE COURT:  Mr. Haas, let me just interpose here.  I
21   scheduled this trial for August 3rd because you wanted the
22   earliest trial date.  If you want a continuance, I will
23   happily grant that.
24           THE DEFENDANT:  I do not want a continuance.  I think
25   this case needs to be dismissed because you cannot provide me

1   a safe venue within my 70 days. There's nowhere in the world
2   you can produce this trial where I will be safe to have it
3   within my constitutionally guaranteed Sixth Amendment speedy
4   trial right --
5           THE COURT: Okay.
6           THE DEFENDANT: -- if you --
7           THE COURT: Mr. Haas, this, we have discussed before,
8   so I am going to just interrupt here because as I've told you
9   before, it does not violate either the statutory Speedy Trial
10  Act nor the constitutional provision for a speedy trial in
11  these extremely unique circumstances to exclude time against
12  the speedy trial clock when we have these -- this public
13  health concern that's going on. So dismissal of the case is
14  not an option.
15          I mean, you're certainly free to take that up on
16  appeal if you are convicted. After the judgment, you can
17  certainly take that up on appeal. So the choice you have is,
18  if you want a continuance because you have your own health
19  concerns over this, again, I'm happy to continue the case.
20          THE DEFENDANT: Absolutely not.
21          THE COURT: What -- I'm sorry. Just go ahead one
22  more time.
23          THE DEFENDANT: I said, absolutely not.
24          THE COURT: Okay. Then we'll stick with the trial
25  date. And then in terms of your -- you called Ms. Singer just

1 now your counsel and your right to whisper to your counsel.
2 You do not have a right to standby counsel, Mr. Haas.  You
3 have chosen to represent yourself as is your right.  We had
4 the discussion about all the disadvantages.  There is no right
5 to standby counsel.  This is something that I have given to
6 you to help you in any way that I can, but there is no right
7 to it.
8 　　　　　So I have, I think, taken steps well beyond what is
9 actually required in terms of facilitating your filing of
10 motions, your ability to have at least some legal advice, and
11 so on, but there is no right to it.  So I certainly want to
12 hear your concerns.  If you have other proposals, as I think
13 Ms. Singer is trying to constructively do, I'm certainly
14 willing to hear that.
15 　　　　　And then with regard to headsets, the idea would be
16 that either by turning your head or whispering, you would
17 still be able to hear one another.  But if the standby counsel
18 is concerned that she does not want to be within six feet even
19 if masked -- and I can understand, I can understand if she has
20 that concern given how the purpose would be to actually speak
21 to one another directly.  If she has that concern, then I'm
22 going to try to make the headset solution work.
23 　　　　　But again, if you have some other proposal that you
24 want to make, I'm happy to hear that.
25 　　　　　THE DEFENDANT:  I don't.  I just think it's

1 ridiculous that you people are forcing a room full of jurors
2 by court ordered -- ordered to appear in court risk their
3 lives over some text messages and some voicemails is just
4 ridiculous.  And I don't think the jurors --
5         THE COURT:  Okay.
6         THE DEFENDANT:  -- are going to be very happy about
7 this either.  I don't think I'm getting a fair trial.
8         THE COURT:  So once again, Mr. Haas, it is your
9 choice in terms of the timing once I have decided that under
10 the law there is no speedy trial violation.  And you're the
11 one insisting on the trial being held in terms of its timing.
12 So okay.
13         Ms. Singer, if we can make the headsets work --
14         MS. SINGER:  Yes, Judge.
15         THE COURT:  If we can make the headsets work -- and
16 again, you know, there is no right to a standby counsel.  So
17 if you want to withdraw and you're not satisfied with being
18 able to sit at -- you know, in the first row of the gallery, I
19 think is what you had proposed, with a headset, then you can
20 go ahead and ask to withdraw.  And I can give it some more
21 thought today, but I would then post a decision by this
22 afternoon.
23         And the other -- oh, the concern that Mr. Haas has in
24 terms of the distancing, I would simply instruct the jury that
25 I have authorized that there be that additional distancing so

1  the jury would not take any kind of adverse inference from
2  that.
3         But go ahead, Ms. Singer.
4         MS. SINGER:  Thank you, your Honor.  If headsets can
5  be used and I can be in both a mask and a shield and gloves
6  and can sit not at counsel table, somewhere -- I mean,
7  somewhere else -- I don't know if it's the first row or the
8  last row -- I can do that.  But without that, your Honor, I
9  would have to ask to withdraw.
10         THE COURT:  Okay.  Let me see if I can -- I'll have
11  to test it with -- you're proposing a shield as well?
12         MS. SINGER:  I am, your Honor, yes.  I did propose,
13  yes.
14         THE COURT:  Okay.  Well, that's a new one.  I think
15  the audibility might become an issue there because we tried
16  face shields in coming up with precautions, and the audibility
17  is a substantial problem.
18         MS. SINGER:  Your Honor, if -- my understanding
19  that -- I mean, the only witness that I would potentially be
20  questioning is Mr. Haas and, therefore, if the court reporter
21  couldn't hear me at that time, I'd be willing -- and I'm
22  distanced from obviously Mr. Haas and the government lawyers,
23  I could take the shield off for that purpose but other than
24  that, I won't.
25         THE COURT:  I meant the audibility --

1     MS. SINGER: The headsets?
2     THE COURT: -- for the attorney/client conference.
3     MS. SINGER: Okay.
4     THE COURT: But that, maybe we can get around that
5  because if the shield is -- do you actually have a shield?
6     MS. SINGER: I do, your Honor, yes.
7     THE COURT: Okay. Is it far away from your face that
8  you think you could slip the -- you know how the interpreters
9  have those handheld small mikes. Could you slip that in
10 between, or is there not enough distance?
11    MS. SINGER: No, you can. I mean, I'd have to -- you
12 have to be -- the only way the shields are effective at all is
13 if you also have a mask on. So the mask obviously would cover
14 my mouth and nose, and then I could slip a microphone between
15 the shield and the mask.
16    THE COURT: Right. Okay. All right. Let me -- I'll
17 look into that, and then I will also see if Systems can have
18 kind of a backup in terms of some kind of chat computer which
19 again, I would instruct the jury that I have authorized,
20 authorized for you.
21    Okay. All right. I will try to put some more
22 concrete steps into implementing these. And for now, though,
23 I think we have a plan instead of the withdrawal of standby
24 counsel.
25    Okay. Mr. Haas, anything else?

1    THE DEFENDANT:  No.

2    THE COURT:  Ms. Singer, anything else?

3    MS. SINGER:  Not at this time, your Honor.

4    THE DEFENDANT:  I believe, your Honor, yes, I would
5    like to say something.

6    THE COURT:  Go ahead.

7    THE DEFENDANT:  I had told you I was going to file
8    another motion to admit the evidence from the one disk of the
9    text messages and another motion for my voir dire questions.
10   And I have them written up and copies of them made yesterday,
11   but they never came for legal mail yesterday, so I'm going to
12   have to put it in today.

13   THE COURT:  Okay.  Yes, go ahead and do that.  And
14   I'm sure Ms. Singer will put it on as quickly as she can.  And
15   if it doesn't reach me in time for the posting of the voir
16   dire questions then obviously, I'll consider them whenever
17   they come in, and then we can address it on Monday.

18   THE DEFENDANT:  Thank you, your Honor.

19   THE COURT:  Okay.  Anything else for the government?

20   MR. JONAS:  Yes, your Honor.  I would -- the
21   defendant just said something a few moments ago regarding the
22   jurors putting their lives at risk over some text messages.  I
23   just want to make sure that that's not something he's going to
24   actually say to the jurors either in opening statement or
25   closing argument.

1     THE DEFENDANT:  Excuse me, your Honor.  I'd like to
2 know why this man is trying to hide the truth from these
3 jurors.  I don't think that's acceptable.  They should know
4 every bit of every part of this case including --
5     THE COURT:  Yes.  So --
6     THE DEFENDANT:  -- the trial.
7     THE COURT:  Okay.  So Mr. Haas, I think it's -- the
8 issue with respect to the admissibility of the text messages,
9 again, we've dealt with that in part at the pretrial
10 conference.  You say you've got another motion to file on
11 that.  That's a separate issue from saying anything to the
12 jurors about the risks we've taken --
13     THE DEFENDANT:  That's what I'm talking about.  That
14 is the truth.  It's the truth.  We're putting their lives in
15 danger because of some text messages.  That is a fact.
16     THE COURT:  No.  Mr. Haas, you are barred from
17 referring to in any way the supposed risk that the jurors are
18 undergoing.  We've taken extraordinary steps to implement as
19 many safety measures as possible, and so that kind of argument
20 is completely off bounds.
21     THE DEFENDANT:  Your Honor, you're not taking any
22 steps.  You're giving them dust masks that wouldn't be allowed
23 in a job site to remove drywall, and you are lying to them
24 saying "post-pandemic" when the numbers are on the rise.
25 Post-pandemic is nowhere within sight.

1  THE COURT: Mr. Haas --

2  THE DEFENDANT: Just on the record --

3  THE COURT: The label on that document was not meant
4  to say that, for example, the national emergency declaration
5  is over and so on. It just simply means that we're actually
6  restarting, trying to restart jury trials. And you have had
7  an opportunity to review all of these steps including the
8  distancing within the jury room which is going to -- within
9  the courtroom which is going to require changing our jury box
10  and the multiple additional precautions we've taken from the
11  moment they step into the courthouse to the jury assembly room
12  where they will be distanced in that, through voir dire which
13  will take place in multiple stages instead of one. So there
14  are many, many steps that we have taken to ensure their
15  safety.

16  So you will not mention that, you know, the risk that
17  you perceive that the jurors are undergoing because it has no
18  bearing on whether the government has proved beyond a
19  reasonable doubt the charges. And that's the only issue at
20  trial. So please do take note of that.

21  And I just want to alert you that if you mention
22  that, then I will be forced to terminate your presentation. I
23  don't want to do that. I want you to take your 20 minutes for
24  the opening statement. I want you to take your one hour for
25  your closing argument. I want you to examine witnesses and so

1  on.  So please don't put yourself in a situation where I
2  decide I have to terminate one of your jury addresses.
3         Okay.  This hearing is adjourned.
4        (Proceedings adjourned at 11:30 a.m.)
5                    *  *  *  *  *  *  *
6                    C E R T I F I C A T E
7        I, Judith A. Walsh, do hereby certify that the
8  foregoing is a complete, true, and accurate transcript of the
9  telephonic proceedings had in the above-entitled case before
10 the Honorable EDMOND E. CHANG, one of the judges of said
11 court, at Chicago, Illinois, on July 28, 2020.
12
13 */s/ Judith A. Walsh, CSR, RDR, F/CRR*_____    September 3, 2020
14 Official Court Reporter
15 United States District Court
16 Northern District of Illinois
17 Eastern Division