521

1          IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ILLINOIS
2                    EASTERN DIVISION

3    UNITED STATES OF AMERICA,        )
                                      )
4              Plaintiff,             )
                                      )
5              v.                     )  No. 19 CR 00486
                                      )
6    ROBERT ANTHONY HAAS,             )  Chicago, Illinois
                                      )  August 6, 2020
7              Defendant.             )  8:54 a.m.

8                      VOLUME 4

9              TRANSCRIPT OF PROCEEDINGS

10        BEFORE THE HONORABLE EDMOND E. CHANG, and a Jury

11   APPEARANCES:

12   For the Plaintiff:        HON. JOHN R. LAUSCH, JR.
                               United States Attorney
13                             BY:  MS. ERIN E. KELLY
                                    MR. BARRY JONAS
14                             Assistant United States Attorneys
                               219 South Dearborn Street, Suite 500
15                             Chicago, Illinois 60604
                               (312) 353-5300
16
     For the Defendant:        MR. ROBERT ANTHONY HAAS,
17                             Pro se;

18   For the Defendant as      BEDI & SINGER, LLP
     standby counsel:          BY:  MS. DENA M. SINGER
19                             53 West Jackson Boulevard
                               Suite 1505
20                             Chicago, Illinois 60604
                               (312) 525-2017

21

22   Court Reporter:           Judith A. Walsh, CSR, RDR, F/CRR
                               Official Court Reporter
23                             219 South Dearborn Street, Room 2118
                               Chicago, Illinois 60604
24                             (312) 702-8865
                               judith_walsh@ilnd.uscourts.gov
25

522

1                         I N D E X

2

3    Closing argument on behalf of the government........Page 541

4    Closing argument on behalf of the defendant.........Page 568

5    Rebuttal argument on behalf of the government.......Page 592

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court.  Jury out.)

2    THE CLERK:  19 CR 486, USA versus Robert Anthony

3    Haas.

4    THE COURT:  Okay.  Let's get appearances from the

5    government.

6    MR. JONAS:  Good morning, your Honor.  Barry Jonas

7    for the United States.

8    MS. KELLY:  Erin Kelly for the United States.

9    THE COURT:  And then Mr. Haas?

10   THE DEFENDANT:  Robert Haas.

11   THE COURT:  And Ms. Singer?

12   MS. SINGER:  Dena Singer.

13   THE COURT:  All right.  Good morning.

14   THE DEFENDANT:  Good morning.

15   THE COURT:  Okay.  We've dropped off copies of the

16   final instructions and the order accompanying the final

17   instructions to Mr. Haas.  And I also believe we provided to

18   Mr. Haas a copy of the clean second superseding indictment,

19   clean in the sense that it's not signed by the grand jury so

20   that the -- this regular jury does not know that a grand jury

21   signed off on the indictment.  So that indictment goes back to

22   the jurors as well.

23   Let's see.  And is there anything for the record?

24   MR. JONAS:  Your Honor, just that I went through some

25   of the jury instructions.  I didn't go through all of them.  I

1    did notice a typo in one of them.

2            THE COURT:  All right.  Which one?

3            MR. JONAS:  This is Page 23, elements of transmitting

4    a threat in interstate commerce.  Element 3, the second line

5    has the word "that" twice.

6            THE COURT:  Okay.  Right.  Thank you.  I'll try to

7    skip over that when I read.  Some day I will have a typo-free

8    set of jury instructions, but today is not that day.

9            All right.  Anything else for the record?

10            MR. JONAS:  No, your Honor.

11            THE COURT:  And Mr. Haas, anything?

12            THE DEFENDANT:  No, your Honor.

13            THE COURT:  All right.  I did test the JERS computer

14    display system for exhibits for deliberations in the

15    ceremonial courtroom yesterday afternoon.  It is plenty loud

16    for the audio.  It's actually very, very loud to the point

17    where I will make sure that the court security officer just

18    kind of shoos people away in the hallway there.

19            All right.  And I did want to make sure, Mr. Haas,

20    that it is not appropriate to read from case law during

21    closing arguments.  It is fine for you to quote the

22    instructions as I said yesterday, but you can't read case law.

23    All right.  Do you understand?

24            THE DEFENDANT:  Yes, your Honor.

25            THE COURT:  Okay.  Let's grab the jury.

1      (Proceedings heard in open court.  Jury in.)

2          THE COURT:  All right.  Please be seated.

3          Good morning, ladies and gentlemen.  Welcome back.

4    So the way we'll proceed today is first, I will read to you

5    most of the instructions of law with just a couple that I'll

6    read after the closing arguments.  So first, I'll read

7    instructions of law.  And this way you'll at least get a

8    chance to hear these instructions of law before the parties

9    argue.  And it will, I think, aid in understanding the

10   parties' arguments.

11         Then the government will give what we call an opening

12   close, like the first closing argument.  Then Mr. Haas will

13   have an opportunity to deliver his closing argument.  And then

14   the government will have a rebuttal closing argument.  And

15   then I'll read the last couple of instructions, and then we

16   can get you going on deliberating.

17         I will now instruct you on the law that you must

18   follow in deciding this case.  I will also give each of you a

19   paper copy of these instructions to use in the jury room, so

20   you don't have to furiously try to copy this down.

21         You must follow all of my instructions about the law,

22   even if you disagree with them.  This includes the

23   instructions I gave you before the trial, any instructions

24   that I gave you during the trial, and the instructions I am

25   giving you now.

1          As jurors, you have two duties.  Your first duty is

2   to decide the facts from the evidence that you saw and heard

3   here in court.  This is your job, not my job or anyone else's

4   job.  Your second duty is to take the law as I give it to you,

5   apply it to the facts, and decide if the government has proved

6   the defendant guilty beyond a reasonable doubt.

7          You must perform these duties fairly and impartially.

8   Do not let sympathy, prejudice, fear, or public opinion

9   influence you.  In addition, do not let any witness' race,

10  color, religion, national origin, or gender influence you in

11  deciding whether that witness is credible.

12         You must not take anything I said or did during the

13  trial as indicating that I have an opinion about the evidence

14  or about what I think your verdict should be.

15         The charges against the defendant are in a document

16  called an indictment.  And again, each of you will have a

17  paper copy of the indictment during your deliberations.  The

18  indictment in this case charges that the defendant -- charges

19  the defendant with threatening to assault and murder federal

20  law enforcement officers and interfere with the law

21  enforcement officers while engaged in the performance of their

22  official duties with the intent to retaliate against the

23  officers on account of the performance of their official

24  duties.

25         The indictment is -- all right.  Okay.  So as I

1    mentioned to the parties before you came in here, some day

2    I'll have a typo-free set of jury instructions.  That is not

3    today.  So there is a second set of charges that charges that

4    the defendant knowingly transmitted in interstate commerce a

5    threat, and so we'll get jury instructions on that as well.

6            The indictment is simply the formal way of telling

7    the defendant what crimes he's accused of committing.  It is

8    not evidence that the defendant is guilty.  It does not even

9    raise a suspicion of guilt.

10           As you know, the defendant, Robert Haas, decided to

11   represent himself at trial.  He has a constitutional right to

12   do so.  His decision to represent himself has no bearing

13   whatsoever on whether he is guilty or not guilty, and it must

14   not affect your consideration of the case.  That the defendant

15   has decided to represent himself should not weigh in favor of

16   or against the defendant or the government.

17           I appointed a licensed attorney, Ms. Dena Singer, to

18   serve as standby counsel.  This means that Ms. Singer was

19   available to give advice to the defendant.

20           Because the defendant decided to act as his own

21   lawyer, you heard him speak at various times during the trial.

22   He made an opening statement.  He's about to make a closing

23   argument after the government delivers its opening argument.

24   He asked questions of witnesses.  He made objections and

25   argued to the Court.

1    I want to remind you that when the defendant was
2 speaking in those parts of the trial, he was acting as his own
3 lawyer, and what he said was not evidence.  The only evidence
4 in this case comes from witnesses who testify under oath on
5 the witness stand including the defendant himself when he
6 testified and from exhibits that I allowed into evidence.

7    The defendant is presumed innocent of the charges.
8 This presumption continues throughout the case, including
9 during your deliberations.  It is not overcome unless, from
10 all the evidence in the case, you are convinced beyond a
11 reasonable doubt that the defendant is guilty as charged.  The
12 government has the burden of proving the defendant's guilt
13 beyond a reasonable doubt.  This burden of proof stays with
14 the government throughout the case.  The defendant is never
15 required to prove his innocence.  He is not required to
16 produce any evidence at all.

17    You must make your decision based only on the
18 evidence that you saw and heard here in court.  Do not
19 consider anything you may have seen or heard outside of court
20 including anything from the newspaper, television, radio, the
21 internet, or any other source.

22    This evidence includes -- the evidence includes only
23 what the witnesses said when they were testifying under oath,
24 the exhibits that I allowed into evidence, and the
25 stipulations that the parties agreed to.  A stipulation is an

1   agreement that certain facts are true or that a witness would

2   have given certain testimony.

3           Nothing else is evidence.  The lawyers' statements

4   and arguments are not evidence.  If what a lawyer said is

5   different from the evidence or what Mr. Haas in closing

6   argument says is different from the evidence as you remember

7   it, the evidence is what counts.  The lawyers' questions and

8   objections and Mr. Haas' questions and objections likewise are

9   not evidence.

10          A lawyer or a party has a duty to object if he or she

11  thinks a question is improper.  If I sustained objections to

12  questions that the lawyers or Mr. Haas asked, you must not

13  speculate on what the answers might have been.

14          If during the trial I struck testimony or exhibits

15  from the record or told you to disregard something, you must

16  not consider it.

17          All right.  Considering the evidence:  Give the

18  evidence whatever weight you believe it deserves.  Use your

19  common sense in weighing the evidence in light of your own

20  everyday experience.  People sometimes look at one fact and

21  conclude from it that another fact exists.  This is called an

22  inference.  You are allowed to make reasonable inferences so

23  long as they are based on the evidence.

24          You may have heard the terms "direct evidence" and

25  "circumstantial evidence."  Direct evidence is evidence that

1    directly proves a fact.  Circumstantial evidence is evidence

2    that indirectly proves a fact.  You are to consider both

3    direct and circumstantial evidence.  The law does not say that

4    one is better than the other.  It is up to you to decide how

5    much weight to give to any evidence whether direct or

6    circumstantial.

7        Do not make any decisions simply by counting the

8    number of witnesses who testified about a certain point.  What

9    is important is how truthful and accurate the witnesses were

10   and how much weight you think their testimony deserves.

11       On the credibility of witnesses, part of your job as

12   jurors is to decide how believable each witness was and how

13   much weight to give each witness' testimony including that of

14   the defendant.  You may accept all of what a witness says or

15   part of it or none of it.

16       Some factors you may consider include:  The age of

17   the witness; the intelligence of the witness; the witness'

18   ability and opportunity to see, hear, or know the things the

19   witness testified about; the witness' memory; the witness'

20   demeanor; whether the witness had any bias, prejudice, or

21   other reason to lie or slant the testimony; the truthfulness

22   and accuracy of the witness' testimony in light of the other

23   evidence presented; and inconsistent or consistent statements

24   or conduct by the witness.

25       Limited purpose of certain evidence:  You heard

1    evidence about alleged uncharged statements and alleged

2    uncharged conduct of the defendant.  That evidence must be

3    considered only for whether or not the government has met its

4    burden of proving the elements of the offenses.  More

5    specifically, you may consider or not consider -- it is up to

6    you based on the evidence -- the uncharged statements and

7    uncharged conduct as evidence of the defendant's motive,

8    intent, knowledge, or identity.  That is all.  Nothing else.

9         You also heard evidence of the defendant's beliefs

10   about the federal government, the Jewish religion, and other

11   topics.  You might or might not agree with those beliefs.

12   Your agreement or disagreement with those beliefs must not be

13   considered in making your decisions about this case.  Instead,

14   the evidence must be considered only for whether or not the

15   government has met its burden of proving the elements of the

16   offenses.  More specifically, you may consider -- or not

17   consider, it is up to you based on the evidence -- the

18   defendant's beliefs as evidence of the defendant's motive or

19   intent.

20        It is proper for an attorney to interview any witness

21   in preparation for trial.

22        You have heard testimony and received evidence that

23   the defendant made statements to David Noordeloos of the State

24   Department, Rick Mullen of the Illinois State Police, Joseph

25   Kostuchowski, who was an FBI task force officer, and

1    Christopher Potts of the FBI.  You must decide whether the

2    defendant actually made the statement and, if so, how much

3    weight to give the statement.  In making these decisions, you

4    should consider all of the evidence including the defendant's

5    personal characteristics and circumstances under which the

6    statements may have been made.

7         You have heard recorded conversations and seen video

8    recordings.  This is proper evidence that you should consider

9    together with and in the same way you consider the other

10   evidence.

11        You were also shown transcripts of the conversations

12   to help you follow the recordings as you listened to them.

13   The recordings are the evidence of what was said and who said

14   it.  The transcripts are not evidence.  If you noticed any

15   differences between what you heard in a conversation and what

16   you read in the transcripts, your understanding of the

17   recording is what matters.  In other words, you must rely on

18   what you heard, not what you read.  And if you could not hear

19   or understand certain parts of a recording, you must ignore

20   the transcripts as far as those parts are concerned.

21        I am providing you with the recordings and a device

22   with instructions on its use.  And after closing arguments,

23   I'll go into the ceremonial courtroom with you and show you

24   how to use it.  The audio system is actually much louder in

25   there, and that might aid you.

1       It is up to you to decide whether to listen to the

2  recordings during your deliberations.  You may, if you wish,

3  rely on your recollections of what you heard during the trial.

4       If you have taken notes during the trial, you may use

5  them during deliberations to help you remember what happened

6  during the trial.  You should use your notes only as aids to

7  your memory.  The notes are not evidence.  All of you should

8  rely on your independent recollection of the evidence, and you

9  should not be unduly influenced by the notes of other jurors.

10  Notes are not entitled to any more weight than the memory or

11  impressions of each juror.

12       The indictment charges that the crimes happened on or

13  about particular dates.  The government must prove that the

14  crime happened reasonably close to the date.  The government

15  is not required to prove that the crime happened on the exact

16  date.

17       The defendant has been accused of more than one

18  crime.  The number of charges is not evidence of guilt and

19  should not influence your decision.  You must consider each

20  charge and the evidence concerning each charge separately.

21  Your decision on one charge, whether it is guilty or not

22  guilty, should not influence your decision on any other

23  charge.

24       In deciding your verdict, you should not consider the

25  possible punishment for the defendant who is on trial.  If you

1    decide that the government has proved the defendant guilty

2    beyond a reasonable doubt, then it will be my job to decide on

3    the appropriate punishment.

4         Okay.  On the elements of threatening a federal law

5    enforcement officer, that's Counts 1 through 5 of the

6    indictment, in order for you to find the defendant guilty of

7    these charges, the government must prove each of the following

8    elements as to each count beyond a reasonable doubt.  There

9    are three of them:

10        First, the defendant made a true threat to assault or

11   murder a federal law enforcement officer; and the defendant

12   must have either intended to communicate a true threat or knew

13   that the communication would be perceived as a true threat;

14   and the defendant acted with the intent to impede, intimidate,

15   or interfere with such law enforcement officer while he was

16   engaged in his official duties or with the intent to retaliate

17   against such law enforcement officer on account of the

18   performance of his official duties.

19        If you find from your consideration of all the

20   evidence that the government has proved each of these elements

21   beyond a reasonable doubt as to the charge you are

22   considering, then you should consider -- then you should find

23   the defendant guilty of that charge.

24        If, on the other hand, you find from your

25   consideration of all the evidence that the government has

1    failed to prove any one of these elements beyond a reasonable

2    doubt as to the charge you are considering, then you should

3    find the defendant not guilty of that charge.

4            All right.  On the definition of "true threat," a

5    true threat is a serious expression of intent to commit

6    unlawful physical violence against another person or a group

7    of people.  The communication must be one that a reasonable

8    observer, considering the context and circumstances of the

9    statement including the surrounding communications, would

10   interpret as a true threat.

11           The government does not necessarily have to prove

12   that the defendant actually intended to carry out the threat

13   or even that the defendant had the capacity to do so, but a

14   lack of intent or capacity to carry out the threat can be

15   relevant circumstances in deciding whether a communication is

16   a true threat.  A threat does not need to be communicated

17   directly to its intended victim, say that the defendant

18   himself would be the one to commit a violent act, or specify

19   when it will be carried out.  Again, however, these

20   circumstances can be relevant in deciding whether a

21   communication is a true threat.

22           A threat may be conditional, that is, may threaten

23   violence if some condition is not fulfilled.  Once again,

24   however, the fact that a communication is conditional can be

25   relevant in deciding whether a communication is a true threat.

1   A communication is not a true threat if it is merely idle or

2   careless talk, exaggeration, or something said in a joking

3   manner.

4           The term "federal law enforcement officer" means any

5   officer, agent, or employee of the United States authorized by

6   law or by government agency to engage in or supervise the

7   prevention, detection, investigation, or prosecution of any

8   violation of federal criminal law.

9           All right.  Count 5 -- and you'll see this when you

10  get a copy of that indictment.  Count 5 charges the defendant

11  with making more than one threatening statement.  The

12  government is not required to prove that the defendant made

13  every one of the threatening statements alleged in Count 5.

14  However, the government is required to prove that the

15  defendant made at least one of the threatening statements that

16  are alleged in Count 5.  To find that the government has

17  proven this, you must agree unanimously on which particular

18  threatening statement the defendant made as well as all of the

19  other elements of the crime charged.

20          All right.  Moving on to the next set of charges,

21  Counts 6 through 13 of the indictment charges the -- charge

22  the defendant with transmitting in interstate commerce a

23  communication containing a threat to injure another person.

24  In order for you to find the defendant guilty of these

25  charges, the government must prove each of the following

1    elements as to each count beyond a reasonable doubt:

2           First, the defendant knowingly transmitted in

3    interstate commerce the communications charged in the

4    indictment; and second, the communications contained a true

5    threat to injure the person of another; and third, the

6    defendant must have either intended to communicate a true

7    threat or knew that the communication would be perceived as a

8    true threat.

9           If you find from your consideration of all the

10   evidence that the government has proved each of these elements

11   beyond a reasonable doubt as to the charge you are

12   considering, then you should find the defendant guilty of that

13   charge.  If, on the other hand, you find from your

14   consideration of all the evidence that the government has

15   failed to prove any one of these elements beyond a reasonable

16   doubt as to the charge you are considering, then you should

17   find the defendant not guilty of that charge.

18          All right.  The definition of "knowingly," which is

19   part of one of the elements that I just read:  A person acts

20   knowingly if he realizes what he is doing and is aware of the

21   nature of his conduct and does not act through ignorance,

22   mistake, or accident.  In deciding whether the defendant acted

23   knowingly, you may consider all of the evidence including what

24   the defendant did or said.

25          The prior definition of "true threat" that applied to

538

1      Counts 1 through 5 also apply to Counts 6 through 13.

2             On interstate commerce, interstate commerce includes

3      any commerce from inside a state to outside a state.  This

4      requirement is satisfied when a communication was transmitted

5      or received over the internet and crossed from inside a state

6      to outside a state.  It is for you to decide, however, if the

7      communication was transmitted or received over the internet

8      and crossed from inside a state to outside a state.

9             Okay.  During the trial, you heard references to the

10     defendant's right to speak under the First Amendment.  And as

11     I've noted before, the protections of the First Amendment have

12     been incorporated into the legal instructions that I have

13     given you.  Your duty is to consider all the evidence that you

14     saw and heard here in court, follow all of my instructions on

15     the law, and determine whether the government has proven every

16     element of the offenses charged beyond a reasonable doubt.

17            All right.  On the elements of entrapment, the

18     government has the burden of proving that the defendant was

19     not entrapped by government agents.  The government must prove

20     beyond a reasonable doubt that either the government agents

21     did not induce the defendant to commit the offense or the

22     defendant was predisposed to commit the offense before he had

23     contact with government agents.  I will define what I mean by

24     the terms "induce" and "predisposed."

25            A government agent induces a defendant to commit a

1   crime, first, if the agent solicits the defendant to commit

2   the crime and, two, does something in addition that could

3   influence a person to commit a crime that the person would not

4   commit if left to his own devices.

5          This other conduct may consist of repeated attempts

6   at persuasion, fraudulent representations, threats, coercive

7   tactics, harassment, or any other conduct that creates a risk

8   that a person who would not commit the crime if left to his

9   own devices will do so in response to the efforts of the

10  agent.  If the agent merely initiated contact with the

11  defendant, merely solicited the crime, or merely furnished an

12  opportunity to commit the crime on customary terms, then the

13  agent did not induce the defendant to commit the crime.

14         A defendant is predisposed to commit the crime -- the

15  charged crime if, before he was approached by a government

16  agent, he was ready and willing to commit the crime and likely

17  would have committed it without the intervention of the agent

18  or he wanted to commit the crime but had not yet found the

19  means.  Predisposition requires more than a mere desire, urge,

20  or inclination to engage in the charged crime.  Rather, it

21  concerns the likelihood that the defendant would have

22  committed the crime if the agent had not approached him.

23         In deciding whether the government has met its burden

24  of proving that the defendant was predisposed to commit the

25  crime, you may consider the defendant's character, reputation;

1    whether the government initially suggested the criminal

2    activity; whether the defendant engaged in the criminal

3    activity for profit; whether the defendant showed a reluctance

4    to commit the crime that was overcome by persuasion by the

5    agent; and the nature of the inducement or persuasion that was

6    used.

7             A verdict form has been prepared for you.  You'll --

8    I will provide the official copy of the verdict form in paper

9    form, of course, when you go to deliberate.  I just want to

10   show it to you so that you'll have seen it before that.  Okay.

11   It may be the simplest federal form you'll ever encounter

12   actually.  It's two pages.  On the first page it's entitled

13   "Verdict form," of course.  And it says, "We, the jury, find

14   the" --

15            MS. KELLY:  The jury can't see it.

16            THE COURT:  I'm sorry.  Thanks for letting me know.

17            Okay.  There we go.  All right.  Yes.  It's entitled

18   "Verdict form."  And it start out, "We, the jury, find the

19   defendant, Robert Anthony Haas," and it just lists the 13

20   counts.  And it's got checkboxes for guilty or not guilty for

21   each one of the counts.  And, of course, you're going to apply

22   all of the instructions that I've given you and you'll have a

23   personal copy of in deciding each one of these counts.

24            And then on the bottom of the page, it says, "Please

25   go to the signature page and sign it."  And the second page is

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 21 of 96 PageID #:2240
Closing argument - government
541

1    simply a signature page.  All right.

2          Okay.  So when you have reached unanimous agreement

3    after you start deliberating, your foreperson will sign it and

4    date the verdict form and fill in the verdict form.  Then each

5    of you will sign it.  You'll advise the court security officer

6    once you have reached a verdict.  And then when you come back

7    to the courtroom, I will read the verdict aloud, out loud.

8          Okay.  So those are the instructions for now.  I just

9    have a couple more at the end of closing arguments.  And we

10   are now, I think, ready to proceed with closing arguments

11   starting with the government.

12         MR. JONAS:  May I proceed, Judge?

13         THE COURT:  You may.

14         MR. JONAS:  And Judge, I'm just going to sit.  It

15   will be easier to work the laptop if I'm sitting.

16         THE COURT:  That's fine.  Both sides can sit if they

17   prefer.

18         CLOSING ARGUMENT ON BEHALF OF THE GOVERNMENT

19         MR. JONAS:  May it please the Court, ladies and

20   gentlemen of the jury.  Robert Haas is an angry person.  He

21   hates, he hates Jewish people.  He believes that Jewish people

22   committed the atrocious attacks on September 11th in New York.

23   He believes Jewish people control the government.  And he

24   extends his hatred to federal agents because he believes that

25   they're protecting Jewish people and as a result, like Jewish

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 22 of 96 PageID #:2241
Closing argument - government
542

1    people, he believes they're terrorists.

2          And he believes that federal agents and Jewish people

3    should be murdered, should be slaughtered.  So he has taken it

4    upon himself to threaten to kill federal agents and Jewish

5    people.  And as a result, he's been charged with 13 different

6    counts in the indictment that you will see when you go back to

7    deliberate.

8          And I want to be very clear.  This case is not about

9    his beliefs.  It's not about his anger.  It's not about his

10   hatred.  This case is about the threats.  It's one thing to

11   hold those beliefs.  That's his right.  He can go on top of a

12   rooftop and shout to the world that he hates Jewish people and

13   that they're terrorists.  He may not be very popular with his

14   neighbors, but that's his right.

15         But it's another thing then to take those beliefs and

16   to start to post on the internet that you're going to kill

17   people, that you're going to slice them open, that you're

18   going to threaten a federal agent.  That has crossed the line

19   from free speech to criminal conduct.  And that's what he's

20   been charged with.

21         Now, the threats, and the judge mentioned this, the

22   threats that the defendant's been charged with fall into two

23   separate buckets.  The first bucket, the first five counts,

24   are threats against a federal law enforcement officer, Task

25   Force Officer Joseph Kostuchowski.  And we call him a task

1    force officer because, as he testified, he's local law

2    enforcement who's been deputized as a federal agent giving him

3    all the authorities of a federal agent.

4            The second bucket of threats are the postings that he

5    made on the internet on VK.  That's that Russian social media

6    site.  And the fact that Joseph Kostuchowski has the authority

7    of a federal law enforcement, that's what gives us the federal

8    hook.  And the fact that the VK threats were sent from inside

9    Illinois to outside the state also gives us the federal hook.

10   That's why we're here in federal court.

11           Now, words matter.  Threats themselves without even

12   the act of carrying them out matter.  They can cause emotional

13   and mental distress of not only the intended targets, whether

14   it's a person or a group, but also family members, friends,

15   neighbors.  That threat spreads.  Think about it.  Joseph

16   Kostuchowski testified that when he received the threats on

17   his life from the defendant, he told his family to be on the

18   lookout.  He told his neighbor.  Think about how that neighbor

19   must have felt, now all of a sudden having to worry whether

20   someone is going to come into your neighborhood and kill TFO

21   Kostuchowski.

22           Threats also beyond just making them themselves

23   entice other people to -- could entice other people to commit

24   violent acts.  The defendant has said, as we heard on the

25   recordings, that he wants to lead the world to exterminate

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 24 of 96 PageID #:2243
Closing argument - government
544

1    Jewish people.  That is a threat.

2         Government's Exhibit 59, the defendant wrote on VK

3    encouraging other people, "Anyone trying to take your freedom

4    of speech, kill them:  The judge, prosecutor, complaining

5    witnesses, and their family."  That is a threat.  So the law,

6    in order to protect people, has made it a crime to post true

7    threats on the internet and to make true threats against

8    federal law enforcement officers.

9         Now, there are a few important things I want to

10   emphasize to keep in mind as I talk to you this morning and as

11   you deliberate.  And I'm sort of reiterating some of the

12   things the judge just told you a moment ago.  First, it's

13   important to note that the government does not have to prove

14   that the defendant intended to carry out the threat or that he

15   had the ability to carry out the threat.  You heard a couple

16   times, he said, "I'm not going to hurt anybody," although

17   other times he did say he was going to hurt somebody.  But it

18   doesn't matter.  This crime is the threat itself.

19        It also doesn't matter if the defendant communicated

20   or did not communicate the threat directly to his intended

21   victim.  So, for example, government's exhibit Count 5, that's

22   a threat, the threats that were charged when the defendant was

23   sitting back, in the back seat of Illinois State Trooper Rick

24   Mullen's car.  He was making threats against TFO Kostuchowski

25   while sitting in the car.  Joe wasn't there.  He didn't hear

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 25 of 96 PageID #:2244
Closing argument - government
545

1    those threats at that time, but it doesn't matter.  Under the

2    law, it's still a threat and it's still a crime.

3              It also doesn't matter if the threat was conditional.

4    "Your money or your life," that's a conditional threat, a very

5    basic example of one.  If you give the money, you spare your

6    life.  It's still a threat.  As you'll hear, the defendant

7    made several conditional threats as the one I just read you

8    now:  If anyone takes your freedom of speech, then do

9    something.  It's still a threat.

10             Now, I want you to focus on two things from the

11   instructions the judge gave you as you go through the evidence

12   and as you're listening to me speak this morning and as you're

13   listening to the defendant speak.  The government has to prove

14   that the defendant's threats were true threats, that they

15   weren't jokes, they weren't idle chatter.  They were serious

16   intents -- sorry, serious expression of an intent to harm.

17   Again, he doesn't have to carry out that intent as long as he

18   expresses a serious intent to harm.

19             Use your common sense.  How do you determine whether

20   it's a true threat?  Look at the words themselves.  Some of

21   the words the defendant said are pretty chilling.  And those

22   alone will tell you that this was a true threat, but you can

23   also look at the context, why he was sending it, the number of

24   threats he made, the tone.

25             There was a voicemail I'll play for you in a few

1    moments he left for Joe Kostuchowski where he was screaming.

2    And you can sort of, even though words on a paper, you don't

3    hear the screaming, you can tell when the defendant puts

4    things in all caps that he's essentially screaming.

5          The other thing to keep in mind is whether or not the

6    defendant intended these to be threats or at least knew that

7    they'd be perceived as such.  And again, use your common sense

8    as you're reviewing the evidence and as I'm talking to you

9    this morning.  It will be clear, there's no other reason why

10   the defendant did this than to send a threat.  So keep those

11   two things in mind.

12         On January 25th, 2018, Department of State Special

13   Agent David Noordeloos went to see the defendant because of

14   threatening statements that the defendant posted to Ambassador

15   Nikki Haley's Instagram account.  Now, as you heard, Agent

16   Noordeloos had to draw his weapon when he first encountered

17   the defendant outside the defendant's home because the

18   defendant made a movement that was threatening in and of

19   itself.

20         And you heard the defendant on the recording -- and

21   you can listen to the recording when you go back to

22   deliberate -- say to Agent Noordeloos that he thought Agent

23   Noordeloos was Mossad and that he was, quote, ready to attack

24   and, quote, he was going to slap Agent Noordeloos' face off

25   with a chain.

Closing argument - government

547

1       And later during the meeting, the defendant

2  acknowledged that Agent Noordeloos was justified in pulling

3  his gun on him.  And you heard from the Ottawa police officer

4  who also said he saw the defendant made a move, and Agent

5  Noordeloos was justified in pulling his gun.

6       But things calmed down after a few moments, and Agent

7  Noordeloos asked, asked if they could go up to the defendant's

8  apartment to talk, and the defendant agreed.  Agent Noordeloos

9  was very respectful.  And you heard him say on the recording

10 multiple times, "I am treating you with respect," he said to

11 the defendant.  And you can hear that in his tone.

12      As he told you, Agent Noordeloos was there to try to

13 assess the defendant, assess whether or not he was actually

14 going to go out and try to hurt Ambassador Haley.  He tried to

15 get the defendant to tone down the rhetoric because the

16 defendant's were making -- was making threats that were

17 concerning.  The defendant's response to Agent Noordeloos?

18 Quote, "You're protecting scumbags by coming to my fucking

19 house right now."  That's the defendant's attitude to law

20 enforcement.

21      Agent Noordeloos tried to help the defendant.  He

22 offered the defendant anger management.  He asked the

23 defendant if he wanted to see somebody.  The defendant's

24 response, quote:  "Shrinks are retarded.  I'm smarter than

25 them."

1    Agent Noordeloos warned the defendant multiple times

2    that freedom of speech does not extend to threats.  He also

3    said to the defendant, "I want you to be able to say your

4    piece."  At no point did Agent Noordeloos say to the

5    defendant, "You cannot post on the internet your beliefs about

6    Jewish people.  You cannot say those beliefs.  You cannot have

7    those beliefs."

8        Agent Noordeloos never said that to him.  In fact, he

9    said the opposite.  He said, "Robert, I want you to be able to

10   say your piece."  But he did ask the defendant just to tone

11   things down from 11.5 down to not make threats.  Agent

12   Noordeloos said, "Meet me halfway."

13       The defendant said, "What's halfway?"

14       Agent Noordeloos said, "No threats."  He warned the

15   defendant that making threats on the internet was a crime.

16   And the defendant even acknowledges, at one point saying to

17   Agent Noordeloos, "If you want to charge me with an internet

18   threat, I'll do two weeks," then he said some profanity and

19   then he said, "I'll go after the person who made the

20   complaint."  So the defendant knows that making threats on the

21   internet is a crime, but he didn't seem to care.

22       The defendant was basically pissed off that the State

23   Department agents came to visit him.  The nerve of them doing

24   their job wanting to protect an ambassador even though they

25   were very respectful and even though after January 27th, 2018,

1    they had no more contact with him.  That didn't matter to the

2    defendant.  His anger stays with him.

3        Months later, months later, he's posting on VK, the

4    Russian social media site, about his meetings with the State

5    Department and his feelings.  Government's Exhibit 43, this is

6    Count 6 of the indictment.  And I suggest to you that you make

7    note of the exhibit numbers that correspond with the counts so

8    you can focus in on them when you deliberate.

9        The defendant wrote on December 29th, 2018, "I don't

10   care if it's a cop, prosecutor, judge, politician, or elite.

11   You try to stop me from telling the truth, I will cut every

12   throat in your home.  Try me."

13       Now, let's be clear.  As I said before, the

14   defendant's not in this courtroom because of his beliefs or

15   because he was trying to tell his version of the truth.  The

16   defendant's in the courtroom because this is a threat,

17   threatening to cut people's throats.

18       Now, a few things about this particular one.  Whether

19   something is a true threat, what the defendant said, is going

20   to be up to you.  You make that determination.  The

21   defendant's definition of a true threat doesn't really apply,

22   but he did say something to Agent Noordeloos that's very

23   interesting.  He told Agent Noordeloos that a threat is if he

24   says, quote, "I am coming -- I am going to cut your throat."

25   He acknowledged to Agent Noordeloos that that's a threat.

Closing argument - government

550

1    And those words said to Agent Noordeloos 11 months

2    prior to the posting are the same words he used in this

3    posting.  He knows that this is a threat, a true threat, and

4    he intended it to be so:  "I will cut every throat in your

5    home."

6    He also upped the ante.  This threat isn't just

7    directed at people he hates, at federal agents, cops,

8    prosecutors, judges.  This threat threatens family members,

9    wives, husbands, children.  "I will cut every throat in your

10   home."  People don't say these words as a joke.  They say them

11   when they're serious, when they're expressing a serious intent

12   to harm.

13   Government's Exhibit 51, on January 27th, 2019, the

14   defendant posted:  "The next time some federal pig tries to

15   intimidate me, I'm following it home and taking its Jew lover

16   family from it.  Future Jew loving terrorists must go too.  As

17   a matter of fact, killing feds who support Jews is righteous

18   and they're guilty of treason.  Saying there's some good Jews

19   is treason and deserves a throat cutting.  Don't say lying

20   maggot shit, and we won't hurt you, bitch."

21   Now, this isn't one of the counts in the indictment,

22   but you can consider this in determining whether or not the

23   defendant intended to send threats for the counts in the

24   indictment, his motive and his intent.

25   But keep in mind, this post, January 27th, the year

1   to the day after his last interaction with any federal agent,

2   he couldn't let it go.  Government's Exhibit 54, this is Count

3   7 in the indictment:  "The next fed that plays billy bad ass,

4   I will slither up behind like a fucking snake and cut to the

5   spine through the Adam's apple.  They all sleep somewhere with

6   future terrorists."

7          And then underneath that is a picture of a hand,

8   presumably the defendant, holding a blade to make the point of

9   how serious he was and that this was a threat to kill people.

10  And he intended it to be.  No one puts that up there unless

11  they're intending to make a threat.  And he uses the pronoun

12  "I," what he's going to do, is "I."

13         Government's Exhibit 57, February 1st, 2019:  "Funny

14  when bitch feds come around with my opinions about my

15  attitude.  I need anger management?"  Remember, Agent

16  Noordeloos offered him anger management, so clearly this is in

17  response to Agent Noordeloos' offer.  "I'll manage my anger on

18  Jew lover pigs guilty of treason with a baseball bat and razor

19  blade, faggot.  Time is up, pigs.  I warned you."  The

20  defendant's response to everything is violence.  There's no

21  discussions with him.  It's violence.

22         Government's Exhibit 60, this is Count 8 in the

23  indictment posted on VK February 12th, 2019:  "These faggot

24  feds thought they could push me to stop telling the facts.

25  They didn't know I think they're a joke.  Bitches.  I push

1   death, son, not intimidation.  I won't make threats.  I'll

2   just come kill you who represent Jews and try to obstruct my

3   First Amendment rights."  Again, no one is trying to obstruct

4   his First Amendment rights, but he doesn't have a right to

5   make threats.

6           Government's Exhibit 61, this is Count 9 in the

7   indictment posted on VK, February 13th, 2019:  "If I am

8   prosecuted for telling the truth, I'm killing everyone" --

9   remember what I said, tone, all caps -- "everyone involved

10  down to the bitch Jews crying pressing charges.  Jews will pay

11  for their crimes against humanity in my lifetime.  Bet your

12  asses, bitch.  I'm coming for you -- I'm coming to get you."

13          Again, he's not being prosecuted for telling his

14  version of the truth.  Let's be clear about that.  He's

15  entitled to his version, his beliefs.

16          Government's Exhibit 64, this is Count 10 of the

17  indictment, February 14th, 2019:  "I have decided amongst

18  myself."  That's an important line.  He's saying, "I have

19  decided amongst myself."  No one is pushing him to do this.

20  No one is inducing him.  No one is entrapping him.  This was

21  his own decision.

22          "I have decided amongst myself, the next fed who

23  comes pointing guns like jump-out boys" -- Agent Noordeloos --

24  "because they want to quote, unquote, chat, I will butcher

25  their families."  Again, he's threatening husbands, wives, and

Closing argument - government

553

1    children.

2           Government's Exhibit 65, this is Count 11 in the

3    indictment.  February 14th, 2019, over a year after his

4    meeting with Dave Noordeloos, on vk.com:  "The day I run up on

5    a maggot fed, there won't be no hands up.  It will be head

6    popped open off its shoulders before it blinks."  So now he is

7    threatening to decapitate federal agents.

8           Government's Exhibit 70, February 23rd, 2019, on VK:

9    "These faggot Jews are burned up when it comes to silencing

10   me.  Anyone who tries, I'll kill its family while extracting

11   who sent them.  Defendant -- defend terrorist kikes and die,

12   maggots.  Try me.  I'm going to get you pieces of dog shit."

13   So now it's not just agents, it's not just their families but

14   it's anyone else who's involved with the agents, anyone who

15   they worked for.

16          Government's Exhibit 74, this is Count 13, April 7th,

17   2019, on VK:  "Lots of feds, federal officers, State

18   Department, AIPAC, Jews will be killed when Americans see this

19   Jewish trash plan.  I'm okay with killing feds.  As a matter

20   of fact, I am going to make that happen -- this happen.  They

21   have met their ending here."

22          Now, I expect the defendant's going to come up and

23   say, "I didn't make a threat to kill anyone in this one, in

24   this posting."  He is saying it's going to make it happen.  A

25   threat doesn't have to be necessarily, "I am going to kill

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 34 of 96 PageID #:2253
Closing argument - government
554

1    you."  If in contact it says, "you're going to be killed,"

2    well, then that's still a threat.  I can be getting somebody

3    else to do it like the defendant said on recordings where he's

4    going to entice other people to join him and kill feds and

5    Jews.

6            Fast forward a month, May 8th, 2019.  The Simon

7    Wiesenthal Center filed a complaint with the FBI regarding

8    some of these same VK posts.  The complaint was assigned to

9    Task Force Officer Joseph Kostuchowski.  So Joe, along with a

10   State Department agent and a couple of the Ottawa police

11   officers, you heard from one of them, went out to see the

12   defendant.

13           As Agent Noordeloos did before him, Joseph

14   Kostuchowski went to assess the defendant to determine how

15   much of a threat he was.  They did what we hoped law

16   enforcement would do.  They tried to tone down the rhetoric.

17   They tried to take the temperature down and lower things.

18   They hoped to reason with the defendant.  They didn't rush out

19   to arrest him.  They simply wanted to talk.

20           But the defendant had no interest in talking to them.

21   Instead, he cursed them out pretty badly.  And he recorded it

22   and put two segments of that on VK.  I'm just going to play

23   one of them, Government's Exhibit 76.

24        (Government Exhibit 76 played in open court.)

25           MR. JONAS:  At no point did TFO Kostuchowski tell

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 35 of 96 PageID #:2254
Closing argument - government
555

1    defendant he couldn't have his beliefs or post his beliefs on

2    the internet.  He was simply trying to talk to the defendant.

3    But you saw the defendant's reaction.  He would have none of

4    it.

5            And after a few minutes, the officers left, the

6    agents left, but that wasn't good enough for the defendant.

7    The defendant was pissed off not only because they were there

8    but because Officer Kostuchowski said, "You're a keyboard

9    warrior."  And as TFO Kostuchowski testified, he did so

10   because he wanted to end the conversation.  He's getting lots

11   of verbal abuse from the defendant, and he wanted just to be

12   done, so he made that statement, and that pissed the defendant

13   off, not just because he had federal agents coming to him but

14   because of that statement.  He was insulted.  He wanted to

15   prove he wasn't a keyboard warrior.

16           Agents leaving him wasn't just enough.  Remember,

17   this is almost a year and a half after Agent Noordeloos.  It's

18   not like agents were constantly coming to the defendant.  So

19   in the same day, May 8th, 2019, he starts sending TFO

20   Kostuchowski text messages, an avalanche of text messages over

21   two days, about 71 text messages plus some phone calls.

22           Government's Exhibit 79, this is Count 1 of the

23   indictment.  Now we're in that first bucket of charges, the

24   threats against TFO Kostuchowski.  A text message sent to him

25   on May 8th, 2019:  "Take off the gun and badge like you said

1    you would, pussy.  Come meet true evil.  I got something for

2    you terrorists."

3           Remember, he told, the defendant told Christopher

4    Potts, the FBI agent who interviewed him after he was

5    arrested, that he believes Joseph Kostuchowski was a terrorist

6    because he represents Jews and protects Jews.  He also said,

7    defendant also said to Rick Mullen in the back of the police

8    car that it's his constitutional duty to kill terrorists.  So

9    when you think about that, when you put that backdrop with

10   this threat, you know the defendant is threatening to kill

11   Joseph Kostuchowski, and that's the way Joe took it.

12          Government's Exhibit 80 are the threats sent on -- or

13   the text messages and the threats sent on May 9th, the next

14   day.  Page 13 of that exhibit is Count 2.  "I thought you

15   wanted to chat, monkey Jew.  You coward old man.  You know I

16   get what I want, and I think you deserve death."  It's pretty

17   clear he was threatening to kill the agent.

18          Same exhibit, Government's Exhibit 80, Page 14.  This

19   is Count 3 of the indictment.  "I'm not afraid to walk out my

20   door in the morning.  You should be, however, considering you

21   support Jewish terrorism, and your anti-American bullshit is

22   going to get you killed."  Now, the defendant may say, "I

23   never said I was going to kill him" in this one but again,

24   when you look at the context of everything that's going on and

25   how he feels about federal agents and Joe in particular, you

Closing argument - government

557

1   know that he's threatening Joe.

2           Text messages weren't enough.  He was also leaving

3   voicemails.  I'm going to play one of them, Government's

4   Exhibit 84.  This is Count 4 of the indictment.

5       (Government Exhibit 84 played in open court.)

6           MR. JONAS:  Pretty angry, not joking, but serious and

7   intended to be that way.

8           Enough was enough.  The defendant was charged with

9   sending threats to Joe.  So on June 11th, 2019, he was

10  arrested at his home in Ottawa, and he was driven from his

11  home to the FBI field office in Chicago by State Trooper

12  Mullen.  You heard Officer Mullen's testimony.

13          And he was sitting in the back of the car and he was

14  recorded, video and audio.  And he knew it because there was a

15  sign, but the defendant couldn't leave it alone.  He was

16  angry.  And that's no excuse for what he did.  Count 5 of the

17  indictment charges the defendant with six separate threats

18  against Joseph Kostuchowski.  Now, as the judge told you, you

19  only need to agree that one of them was a threat.  You need to

20  unanimously agree on one but you only need one.  But I think

21  you're going to find all six of them are threats.

22  Government's Exhibit 11 is the first one.

23      (Government Exhibit 11 played in open court.)

24          MR. JONAS:  "He needs to die.  Am I wrong?  This is

25  pro-terrorism right here, what this guy is doing.  That's a

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 38 of 96 PageID #:2257
Closing argument - government
558

1   fact.   A jury of my peers will say kill this motherfucker.   I

2   know it.   He needs a fucking 12-gauge to his fucking throat

3   and pull the trigger and pop his head off his fucking

4   shoulders, and it's going to happen."   That's a threat.

5           Government's Exhibit 17, the second one in the car.

6       (Government Exhibit 17 played in open court.)

7           MR. JONAS:   "I don't think he can protect himself

8   from me."   In the context of everything you've heard, that's a

9   threat.

10          Government's Exhibit 20.

11      (Government Exhibit 20 played in open court.)

12          MR. JONAS:   "I think I'm going to spend every waking

13  moment of my life making sure this Joe Kostuchowski gets

14  fucking killed by an American citizen."   Again, he doesn't

15  have to say, "I am going to do it."   If he's saying, "I am

16  going to get others to do it, I am going to get other people

17  to kill you," that's a threat.

18          Government's Exhibit 22.

19      (Government Exhibit 22 played in open court.)

20          MR. JONAS:   "I don't like terrorists in my country.

21  It's my constitutional duty to kill them."   He thinks Joe is a

22  terrorist.   He says it's his duty to kill him.   That's a

23  threat.

24          Government's Exhibit 26.

25      (Government Exhibit 26 played in open court.)

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 39 of 96 PageID #:2258
Closing argument - government
559

1      MR. JONAS:  "When I look at that Joe smiling little

2  smug little face, I see one of those Israelis planting

3  explosives in the World Trade Center.  That's what I see.

4  Terrorists.  He's a rat.  I think rats need to be put in dog

5  crates and drowned."

6      And the last one, Government's Exhibit 27, the last

7  threat making up Count 5.

8      (Government Exhibit 27 played in open court.)

9      MR. JONAS:  "I don't care if it's ten years from now.

10 I'm going to get this fucking faggot for this shit, terrorist

11 motherfucker."  "I am going to get this guy," is what he's

12 saying.  It's pretty explicit.  It's pretty clear on his face

13 that he's threatening Joe.

14     Now, the judge read to you a few moments ago the

15 elements of each offense, the parts of each charge that the

16 government must prove beyond a reasonable doubt.  And I want

17 to briefly talk about those.  The first bucket of charges, the

18 charges against Joe, a federal law enforcement officer, the

19 government has to prove three things:  That the defendant made

20 a true threat to assault or murder a federal law enforcement

21 officer.  Let me unpack that for a moment.

22     First, there's no question that the defendant was the

23 one who sent the text messages, the voicemails, or was in the

24 back seat of Trooper Mullen's car.  There's no question it was

25 the defendant.  He admitted it on the stand.  And the same

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 40 of 96 PageID #:2259
Closing argument - government
560

1    thing for the VK postings.  It's not an issue.

2        The second is the threats were made to a federal law

3    enforcement officer.  And we talked about that a moment ago,

4    that TFO Kostuchowski had the duties and authorities of a

5    federal law enforcement officer because he was deputized.

6        And the third is true threat.  And I talked about

7    true threat:  The words, the context, why he's saying this to

8    Joe.  And think about this.  The threats he's making against

9    Joseph Kostuchowski while sitting in the back of an Illinois

10   State trooper car are clearly true threats and intended to be

11   serious true threats by the defendant or at least perceived,

12   he knew they would be perceived by other people because why

13   else would anyone say that in the back seat of a trooper car?

14   You're not going to joke with a trooper that he's going to

15   kill another law enforcement officer.  He was serious.  He was

16   angry.

17       Consider the words he used.  "You know I get what I

18   want, and I think you deserve death."  He said, as I said a

19   moment ago, "I don't care if it's ten years from now.  I'm

20   going to get this fucking faggot."  He meant what he said.

21   You can consider the defendant's tone, the number of times he

22   contacted Joe, all of that.

23       The second element the government must prove, that

24   the defendant intended to communicate a true threat.  And I

25   just touched upon that one.  And the third is that he intended

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 41 of 96 PageID #:2260
Closing argument - government
561

1    to impede, intimidate, or interfere with Joe's duties or

2    retaliate against Joe.

3          Now, let's be clear about this.  They did not have a

4    preexisting relationship.  It's not as if they were neighbors

5    and he was making the threats against TFO Kostuchowski because

6    they had a dispute over their yard or because Joe was a Cubs

7    fan and defendant is a White Sox fan.  No.  Their entire

8    engagement revolved around Joe doing his job, performing his

9    official duties.  And the defendant was trying to retaliate

10   against him for that because the defendant believes Joe is a

11   terrorist.

12         And the defendant was trying to intimidate Joe,

13   interfere with his duties because he wanted Joe to back off

14   and leave him alone even though Joe did after that May 9th --

15   after that May 8th meeting.  Remember, it was the defendant

16   who continued the contact.

17         The other bucket of charges, the VK posts on the

18   internet, threats also but slightly different.  It doesn't

19   have to be a threat against a federal law enforcement officer

20   although in this case, many of them were.

21         Three elements that the government has proven beyond

22   a reasonable doubt:  The defendant knowingly transmitted in

23   interstate commerce the communications charged.  That's easy.

24   He's here in Ottawa, Illinois, goes on the internet, sends out

25   the posts to VK in Russia.  They left the state of Illinois.

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 42 of 96 PageID #:2261
Closing argument - government
562

1    That's interstate commerce.  And I told you earlier, that's

2    what gives us the federal hook.

3           Two and three, the defendant's -- defendant

4    communications contained a true threat to injure the person of

5    another and he intended to communicate a true threat or knew

6    the communication would be viewed as a true threat.  Again,

7    look at the words.  He was serious.  That was a serious intent

8    to make a threat, and he knew it.  He told David Noordeloos

9    where the threat was.

10          Use your common sense and determine yourself whether

11   or not this is a threat.  It clearly is.  The words alone were

12   chilling:  Popping off someone's head, slicing someone's

13   Adam's apple, killing their families.  Of course, those are

14   threats.

15          When the defendant says, Government Exhibit 68 --

16   this is not one in the indictment, but you can consider this

17   when you consider the ones that are in the indictment to

18   determine the defendant's intent.  He posted on VK, "The next

19   cop who tries to intimidate me for telling the truth, I'm

20   going to stab its entire family to death.  Fact."  Not joke,

21   fact.  The defendant was serious.

22          Now, the judge also read to you some instructions

23   regarding entrapment.  And the defendant may get up here and

24   say he was pushed into doing all this because Agent Noordeloos

25   drew his gun on him or because Joseph Kostuchowski said,

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 43 of 96 PageID #:2262
Closing argument - government
563

1     "You're a keyboard warrior."  That is not even close to

2     entrapment.  Think about a classic entrapment scenario.  A

3     very simple one would be an undercover agent going up to

4     someone on the street and saying, "Hey, sell me drugs," and

5     the person says, "No."

6          "Come on, please.  I need them for my family.  I need

7     them to save my kid's life.  I'll give you a million dollars."

8     Something beyond just soliciting the crime, that could be

9     entrapment.  We had nothing like that here.

10         Now, to -- we, the government, have to prove beyond a

11    reasonable doubt the defendant was not entrapped, and we have

12    done that.  And there's one of two things we need to prove,

13    just one of these two things, but we have proved them both.

14    The first is the defendant was not induced.  In other words,

15    what I just said a moment ago, he wasn't offered to commit the

16    crime by someone in the government and then that person, the

17    person in the government, went beyond just a mere offer:

18    Begging, pleading, offering money, or something like that.

19    That's inducement.

20         The second thing that the government could prove that

21    he wasn't entrapped is predisposition, that the defendant was

22    inclined to commit these crimes before he ever met a

23    government agent.  So I want to talk about inducement for a

24    moment.

25         Defendant meets Agent Noordeloos January 2018.  As I

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 44 of 96 PageID #:2263
Closing argument - government
564

1    said, Agent Noordeloos tried to talk the defendant out of

2    committing these crimes.  This is the opposite of inducement.

3    He's not telling the defendant, "Hey, Robert, I want you to

4    post on VK all these threats.  I'll give you a million dollars

5    if you do."

6           Nothing like that happened.  In fact, they didn't

7    even talk about VK.  And this is also a year before the first

8    charged count on VK, a year before.  So there was no

9    inducement.  He was trying to talk him out of committing the

10   crime.  He asked the defendant, "Tone down your rhetoric.

11   You're going to go to jail.  You're going to get arrested if

12   you keep this up."  He warned the defendant.  The defendant

13   didn't care.  He was angry.

14          Joe K. never said -- Joe Kostuchowski never said to

15   the defendant, "Hey, how about after I leave here, you start

16   sending me threats.  That would be great.  I'll give you a lot

17   of money, beg you to do it.  It will help me out if you do

18   it."  He never said that.  His comment about keyboard warrior

19   was just to shut things down, shut the conversation, end all

20   the abuse he was getting.  It's natural.  It's normal.  It's

21   surprising Joseph Kostuchowski didn't fly off the handle at

22   the defendant, but he kept his cool.

23          There was no inducement.  The whole comment about

24   keyboard warrior is divorced from sending the threats later

25   on.  The defendant himself made the choice to keep contacting

Closing argument - government

565

1    Joseph Kostuchowski.  The defendant made the choice to send

2    those threats.  Joseph never did anything to encourage the

3    defendant to do that.  There was no inducement for either sets

4    of charges; therefore, no entrapment.

5         Let's talk for a moment about predisposition.

6    Remember why David Noordeloos went out to see the defendant?

7    Because he was already posting threats on the internet against

8    Ambassador Haley.  The defendant, when David Noordeloos was

9    there, they discussed threats that he posted to some woman in

10   the UK, that he sent to some woman in the United Kingdom.

11        If you remember, David was reading his phone, and he

12   read a threat that the defendant said to someone in the United

13   Kingdom, "I'll kill everyone you love if you play with me,"

14   and then he used a profanity.  So the defendant has been

15   sending threats long before his engagement with a federal

16   officer.  He was predisposed to send threats.  There was no

17   entrapment here.

18        At the end of the day, what this boils down to is

19   were these threats true threats -- and clearly, they were

20   serious intentions to harm -- and two, the defendant intended

21   to be threats or recognized that other people would perceive

22   them as threats.  Without a doubt.  That's why he was doing

23   this.  He wanted to threaten.

24        His hatred, his anger, his beliefs are no excuse for

25   his criminal conduct.  He could have hold all that -- held his

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 46 of 96 PageID #:2265
Closing argument - government
566

1    beliefs and not made these threats.  And I don't want you to

2    convict him because of his beliefs.  I'm going to be very

3    clear about that.  He's entitled to them.  But we are asking

4    you to convict him of all counts because of the vicious,

5    violent, vile threats he posted on the internet and the

6    threats he made to Task Force Officer Kostuchowski.  Thank

7    you.

8              THE COURT:  All right.  Ladies and gentlemen, just to

9    make sure that the timing is right, we'll take our midmorning

10   break now, and then we'll have the defendant's closing

11   argument.  So we'll take 15 minutes.

12        (Proceedings heard in open court.  Jury out.)

13             THE COURT:  Let's go on the record for a moment.

14             So I do propose to fix the case statement in the jury

15   instructions which left out Counts 6 through 13.  And that

16   must have been before the second superseding.  So it's on Page

17   3 of the jury instructions.  I'm going to add a paragraph from

18   the case statement which has already been read on threats in

19   interstate commerce.

20             So any objection to that from the government?

21             MR. JONAS:  No, your Honor.

22             THE COURT:  Mr. Haas?

23             THE DEFENDANT:  No, your Honor.

24             THE COURT:  Okay.  Also, there were a few times where

25   the pattern jury instructions referred to the lawyers only but

1    here, it should be the lawyers and Mr. Haas.  And so I'll add

2    those as well.  I just missed doing that.

3              So any objection to that from the government?

4              MR. JONAS:  No, Judge.

5              THE COURT:  Mr. Haas?

6              THE DEFENDANT:  No, your Honor.

7              THE COURT:  I verbally did it, but I should do it in

8    writing, too.  And since I'm doing that, I might as well fix

9    the double "that's."  So I'll fix that, too.  Okay.  It might

10   take a little longer, but we'll try to do it in under 15

11   minutes.  All right.  Thanks.

12        (Recess from 10:08 a.m. to 10:25 a.m.)

13        (Proceedings heard in open court.  Jury out.)

14             THE COURT:  Let's go back on the record.  The court

15   resumes in session.

16             Mr. Jonas, do you have something for the record?

17             MR. JONAS:  I do, Judge.  I have a question regarding

18   the alternates and whether or not it's your Honor's plan to

19   release them outright or to instruct them that they still

20   cannot discuss the case in case they need to come back.

21             THE COURT:  Yes.  It's provisional, so I tell them

22   that although they're not going to start out in deliberations

23   that they still must not communicate about the case, don't

24   research it, and so on in case we need to call them back.

25             MR. JONAS:  Good.  Thank you.

Closing argument - defendant

568

1           THE COURT:  All right.  Let's get the jury.

2       (Proceedings heard in open court.  Jury in.)

3           THE COURT:  All right.  Please be seated.

4       Okay.  We're ready for the defendant's closing

5   argument.  And again, I've authorized Mr. Haas to deliver it

6   from the table and sitting down.

7           Okay.  Mr. Haas, go ahead.

8            CLOSING ARGUMENT ON BEHALF OF THE DEFENDANT

9           THE DEFENDANT:  Thank you, your Honor.

10          I'd like to thank you, the jury, for coming here

11  today.  This is obviously a very important day for me.  I'm

12  very nervous.  And they have cold air blasting on me, so I

13  might be shaking a little bit, but I'm very happy to have you

14  here.  And I've been waiting for this experience for over a

15  year now.

16          I'd like to start by saying I really like this quote

17  here.  Thomas Jefferson stated, "I consider trial by jury as

18  the only anchor yet imagined by man, by which a government can

19  be held to the principles of its constitution."  And that is

20  why I've asked you to be here this week.  And it really means

21  a lot to me.  Thank you very much.

22          To start, the government needs -- is required to

23  prove that subject threats were true threats.  The government

24  must also prove that the defendant acted with the intent to

25  impede, intimidate, or interfere with such law enforcement

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 49 of 96 PageID #:2268
Closing argument - defendant
569

1    officer while he was engaged in his official duties or with

2    the intent to retaliate against such law enforcement on

3    account of the performance of his official duties.

4         In U.S. Code 875(c), in order to convict the

5    defendant of these charges, the government must prove the

6    defendant knowingly transmitted in interstate commerce the

7    communication charged in the indictment.  Similar to the

8    115(a)(1)(B) charges, the government must also prove the

9    communication contained a true threat to injure the person of

10   another.

11        Finally, the government must prove that the defendant

12   intended to communicate a true threat or knew that the

13   communication would be viewed as a true threat.  This last

14   element requires the government to satisfy a mens rea

15   requirement by proving that the defendant intended or knew

16   that the communication was to be perceived as a threat.

17        Circumstantial evidence is, it's used in every case.

18   And it's required to prove intent because intent is formed in

19   my mind.  It's not something the government can just say,

20   "This was his intent," or "This was his intent."  They don't

21   know what my intent is.  They are projecting an intent to you

22   people.  They don't know what my intent is.  They don't know

23   what my feelings are.  They don't know what I truly believe.

24   They have little pieces of it, and they've blacked out a bunch

25   of it for you in the evidence.

Closing argument - defendant

570

1          My conduct proves that I am extremely threatened, in

2     fact.  For example, I believe Israelis demolished the World

3     Trade Center on September 11th.  I believe the Likud Party,

4     Israel's ruling party headed by Benjamin Netanyahu, controls

5     the Israeli government.  And I believe a good portion of the

6     U.S. federal government is their toadies, their lackeys doing

7     their work for them, representing them.

8          I have proven that there's many conspiracies against

9     the American constitutional guarantees and against American

10    lives.  You can see Government Exhibits 56, 58, 59, 60, 61,

11    63, etcetera.  Those all speak of being prevented from telling

12    the truth.  And it is well established that speech involving

13    government impropriety occupies the highest rung of First

14    Amendment protection.

15         Moreover, the public has a significant interest in

16    encouraging legitimate whistleblowing so that it may receive

17    and evaluate information concerning the alleged abuses of

18    public officials.  The public's interest in exposing potential

19    wrongdoing by public employees is especially powerful.

20         What about speech, protecting free speech, not a

21    threat but a warning against violating constitutional

22    guarantees such as the First, Second, and Fourth Amendments,

23    etcetera.  I have demonstrated that the United Nations plans

24    to create a task force to assist its member nations with the

25    collection of weaponry from civilian hands in Government

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 51 of 96 PageID #:2270
Closing argument - defendant
571

1    Exhibit 74.  And I'll ask them to show that shortly.  I also

2    post September 11, 2001, photos.  And they created the Patriot

3    Act due to this.  And that is a law that is stripping away our

4    First and Fourth Amendments currently.

5         The alleged threats do not have a specific --

6    specified target.  They are all exaggerated talk speaking of

7    very large groups of people, obviously not realistically

8    possible, not a true threat.  Also, all of them are

9    self-defense against the largest and oldest terrorist

10   organization in the planet:  Illegal apartheid State of Israel

11   and their lackeys in the United States government.

12        The same people who demolished the World Trade Center

13   on September 11th with 2,000 Americans inside in order to,

14   number one, bring Americans into a fake war on terror to

15   expand Israel to its God's promised land from the Nile to the

16   Euphrates and, number two, to take away Americans' freedom;

17   for example, the Fourth Amendment and the First Amendment.

18   Now the FBI is policing social media for the JIDF, ADL, JDL,

19   etcetera.  JIDF is the Jewish Internet Defense Force.  JDL is

20   the Jewish Defense Force.

21        When I say "greater Israel," it's called the greater

22   Israel project.  And you could actually find it in the Bible

23   in Genesis 15:18; Deuteronomy 1, verse 7; Deuteronomy 11,

24   verse 24; and Joshua 1, verse 4.  And I'll explain those to

25   you also.

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 52 of 96 PageID #:2271
Closing argument - defendant
572

1          MR. JONAS:  Your Honor, I'm going to object to

2     reading from the Bible.  I don't think it's relevant or in

3     evidence even.

4          THE COURT:  That is sustained.  It is not in

5     evidence, Mr. Haas.  So you do have to stick to what was put

6     in evidence.  And along the lines that you've been talking,

7     it's those particular defense exhibits and the one overlapping

8     government exhibit.

9          THE DEFENDANT:  I'm just -- I'm just explaining my

10    reasoning behind this, your Honor.  I'm not -- I'm not saying

11    that these are facts.  I'm just saying this is what I believe,

12    and this is what I intended to do.

13         THE COURT:  That is --

14         THE DEFENDANT:  I'm trying to explain my intent.

15    That's all.

16         THE COURT:  That's now confined to your testimony and

17    to the exhibits.  And I don't believe that in particular was

18    put in, so please don't read from that.

19         THE DEFENDANT:  Okay, your Honor.

20         I had mentioned earlier that I believe the

21    Rothschilds are conspiring against humanity, against the

22    United States.  They control the planet.  They control our

23    banks.  And I had mentioned that all wars are banker wars.

24    There are nine countries left in the world without Rothschild

25    central banks.  And I said that already.  Those countries are

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 53 of 96 PageID #:2272
Closing argument - defendant
573

1    Russia, China, Iceland, Cuba, Syria, Iran, Venezuela, North

2    Korea, and Hungary.

3           These are facts.  These are all countries that we are

4    currently attacking by our media campaign, by sanctions, by

5    any way possible to alienate Americans against these people so

6    they can deceive us into war with these countries and use us

7    for their -- for their conspiracy basically, is what they're

8    trying to do.

9           What is going on here is I feel I'm protecting myself

10   from a bad faith investigation, retaliatory action against my

11   First Amendment protected speech using government officials to

12   chill my protected speech.  It started out small, me debating

13   with people online who turned out to be JIDF.

14          And I didn't address it in the police reports in

15   front of you guys, but there is reports that state that this

16   lion's vault internet group --

17          MR. JONAS:  Your Honor, I'm going to object.  I think

18   he's referring to material that's not in evidence.

19          THE COURT:  Sustained.  The last sentence, the jury

20   will disregard.

21          Mr. Haas, if you can, just from time to time pull up

22   your mask.

23          THE DEFENDANT:  Sorry.

24          I've been dealing with these internet troll groups

25   for a long time.  And they come online saying, "You're an

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 54 of 96 PageID #:2273
Closing argument - defendant
574

1    anti-Semite.  You're a racist.  You're a Nazi.  You're a

2    Muslim.  You're an ISIS recruiter."  And I'd like to start

3    explaining some of these things that they say to me.  An

4    anti-Semite.  Semitic is a language group --

5              MR. JONAS:  Your Honor --

6              THE DEFENDANT:  It's not a race of people.  It's not

7    a -- it's a language.

8              THE COURT:  All right.

9              THE DEFENDANT:  Arabic, Aramaic --

10             THE COURT:  All right.  One second.  There's an

11   objection.

12             MR. JONAS:  I'm going to object to this line of --

13   this argument because it's not based upon any of the evidence

14   presented to the jury.

15             THE COURT:  That's sustained, too.  This

16   particular -- that particular topic was not put in evidence.

17   So the objection is sustained.

18             THE DEFENDANT:  Okay.  These people attack me and

19   call me names in order to -- in order to infuriate me.  And

20   they threatened me.  I have many threats.  They mentioned one

21   about the girl in the United Kingdom.  I had a girlfriend in

22   the United Kingdom, and she had two small children who came to

23   live with me in the United States.  This girl threatened them.

24   I threatened her back.  I probably shouldn't have done it.  I

25   probably should have called the police on her.  Neither of us

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 55 of 96 PageID #:2274
Closing argument - defendant
575

1    called the police.  But I showed it to the Department of State

2    when they said, "Oh, you get threats."

3          I said, "This lady threatened my girlfriend and her

4    children in another country, and I can't even defend her

5    because they're overseas.  They're not with me right now."

6          And he said, "Oh."  And it's in that video.  You can

7    see it, Ambrosine Yolanda Shitrit or something.  And she's

8    from a group called Eye on Anti-Semitism.  And that was her

9    point, was to upset me and rile me up so she could get me to

10   say something.

11         MR. JONAS:  Objection, your Honor.  He's arguing

12   facts not in evidence.

13         THE COURT:  Sustained on that last sentence.  The

14   jury will please disregard.

15         THE DEFENDANT:  Your Honor, can I read some quotes

16   from other people?

17         THE COURT:  They have to be in evidence, Mr. Haas.

18         THE DEFENDANT:  Okay.  In each district of the

19   federal circuit courts, they have their own precedent, their

20   own laws upon --

21         THE COURT:  Mr. Haas, I have given the jury the law

22   except for a couple last --

23         THE DEFENDANT:  I'm not trying to give them law.  I'm

24   just explaining something, please, if you'll allow me.

25         THE COURT:  All right.  Why don't you put on your

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 56 of 96 PageID #:2275
Closing argument - defendant
576

1    sidebar gear, and you can explain it to me first.

2         (Proceedings heard at sidebar:)

3         THE DEFENDANT:  Your Honor, I'm not trying to cite

4    cases.  I'm trying to explain that these federal officers who

5    are enforcing the law don't know what the law is in each

6    circuit.  They basically fly by the seat of their pants and

7    decide on their own what is illegal and what is not or what is

8    a threat or what is free speech.

9         THE COURT:  All right.

10        THE DEFENDANT:  That's all I'm trying to do.

11        THE COURT:  What you can't -- cannot do is try to

12   explain the federal court structure including district courts

13   and what is binding precedent.  You can point to what, for

14   example, Mr. Noordeloos actually said or what Mr. Kostuchowski

15   actually said.  And if you think that that does not match with

16   the actual instructions I gave, then you can point that out as

17   a factual matter and how that might have bearing on their

18   conduct towards you, but that's it.  It's got to be tied to

19   what they said.

20        And then if you can match that up against the legal

21   instructions I've given, then that's fine, too, but that's it.

22   You can't talk about the general structure of the federal

23   court system nor can you -- and we discussed this briefly in

24   the jury instructions conference yesterday.  Nor can you

25   assert that the precedent is not clear.

Closing argument - defendant

577

1        So these are all concepts that are foreign to the

2   jury and are irrelevant.  So you can bring it back to the

3   facts of what they said, match it against the instructions,

4   and make a factual point about their conduct, and that's it.

5   Do you understand?

6            THE DEFENDANT:  Yes, your Honor.

7        (Proceedings heard in open court:)

8            THE COURT:  All right.  You may resume as we

9   discussed at the sidebar.

10           THE DEFENDANT:  I'd like to ask the government to put

11  up Government Exhibit 74.

12           THE COURT:  All right.  I'll ask the government to do

13  that.

14       (Pause.)

15           THE DEFENDANT:  This is the United Nations office

16  for --

17           THE COURT:  I don't think it's up yet.

18           Okay.  Go ahead.

19           THE DEFENDANT:  The document, can you please zoom in

20  on that document?  Just the document.  And this speaks of

21  creating a United Nations police force, police task force with

22  the specific mission of assisting member nations with the

23  collection of weaponry from civilian hands.

24           When I was a child, I was taught in school before I

25  could graduate high school that we have constitutional

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 58 of 96 PageID #:2277
Closing argument - defendant
578

1    guarantees --

2            MR. JONAS:  Your Honor --

3            THE COURT:  The objection is sustained.  There was no

4    evidence on your schooling, so the jury will disregard that

5    last remark.

6            THE DEFENDANT:  Your Honor, I'd like to say we're all

7    taught in school, every one of us is taught in school that we

8    have constitutional guarantees.  And you can't finish high

9    school without taking a test that says you have a First

10   Amendment, a Second Amendment, a Fourth Amendment.  This

11   document contradicts that, what you're taught in school,

12   directly.

13           It is treason.  It is a foreign agency trying to

14   enter the United States and create law, codification, laws to

15   disarm Americans, to make us weak so they can control us.

16           MR. JONAS:  Objection.

17           THE COURT:  All right.  Overruled.  It's argument.

18   He is representing himself.  I will allow it to stand.

19           THE DEFENDANT:  These people have been conspiring

20   against us for a long time, and it's starting to work because

21   of their World Trade Center and they own our media.  So they

22   can control what we believe and what we see and what we hear.

23   The people who control the media are extremely powerful.  And

24   our media is controlled by one specific group nowadays.  And

25   that's a problem.  It's dangerous.  Now we have internet and

Closing argument - defendant

579

1    we can inform each other --

2           THE COURT:  All right.  One moment.  Let's take a

3    sidebar.

4           (Proceedings heard at sidebar:)

5           THE COURT:  All right.  Mr. Haas, you're, I think,

6    approaching approximately the 15-minute mark from when you

7    started on this explanation of your various beliefs.  And I

8    did allow the limited number of defense exhibits to give you

9    some leeway in expressing your beliefs because they have some

10   relevancy to motive and intent.

11          Now, I think most people would see that as

12   inculpatory as opposed to exculpatory, but I did allow you to

13   put in evidence because you proposed it, and you are

14   representing yourself.  I'm trying to give you some leeway.

15   But you have used about 15 minutes of time on this.  So you

16   are going to have to wrap that part up and start trying to

17   then discuss the other facts in evidence.

18          If you want to try to tie them to jury instructions,

19   you should be doing that, too.  But you have to get wrapped up

20   on this part of your closing argument where you're just laying

21   out these beliefs.

22          THE DEFENDANT:  I'm going to need at least ten more

23   minutes, your Honor, to explain this.

24          THE COURT:  Again, it has to be tied to actual

25   evidence in the case.

Closing argument - defendant

580

1          THE DEFENDANT:  Yes.

2          THE COURT:  I can -- I'll give you -- I don't know

3    that you have ten minutes' worth of material based on the

4    evidence in the case that you put in, but I'll allow you to do

5    that on your beliefs, but you've got to get to the other

6    actual facts of the case.  So I'm going to start the clock now

7    on that.  Just bear that in mind.  All right?

8          THE DEFENDANT:  Yes, your Honor.

9       (Proceedings heard in open court:)

10         THE COURT:  All right.  You can proceed as we

11   discussed at the sidebar.

12         THE DEFENDANT:  I'd like the government to show

13   Defense Exhibit 19.

14         THE COURT:  One moment.  Did you say Defense 19?

15         THE DEFENDANT:  Yes.

16         THE COURT:  1-9?  All right.  I'll ask the government

17   to do that.

18         THE DEFENDANT:  Again, these photos demonstrate what

19   I believe I am dealing with when I'm talking about these

20   people online.  It's not just FBI Joe Kostuchowski.  These are

21   our allies, the people who control Israel.  This is them right

22   here.  And this is who I expose online.  This is who I talk

23   about.  And this is a very serious matter.  This is dangerous.

24         Most people that I talk about this to, if they do

25   agree with me, I say -- I say, the best thing you can do in

Closing argument - defendant

581

1    the world is share this information.  Share this.  And they

2    say, "I have children.  I can't do that."

3              MR. JONAS:  There's no evidence about what the

4    defendant shares with other people online to this line, this

5    argument.

6              THE COURT:  Well, on that specific last sentence that

7    he stated, the objection is sustained, and the jury will

8    disregard it.

9              THE DEFENDANT:  I believe this is a very dangerous

10   subject to address not only because -- because who it is, who

11   you're dealing with but it's because they have trained

12   everyone else to believe that you are threatening --

13   threatening Judaism when you expose the State of Israel.  I

14   personally -- that is my personal belief.

15             Could we go to Defense Exhibit 8, please?

16             THE COURT:  All right.  I'll ask the government to

17   put on 8.

18             THE DEFENDANT:  And then zoom in on the photo in the

19   middle.

20             This was the mayor of Chicago.  His father blew up

21   the King David Hotel along with Menachem Begin in the 1940s.

22   He was Obama's chief of staff.  I have every reason in the

23   world to be scared for my life when I talk about these things,

24   but as an American citizen, I need to expose it.  And you

25   people need to know about it, too, so we can vote and change

Closing argument - defendant

582

1    these things --

2              MR. JONAS:  Your Honor.

3              THE DEFENDANT:  -- in our government.

4              THE COURT:  All right.  One moment.  The reference to

5    the jury?

6              MR. JONAS:  Yes, Judge.

7              THE COURT:  All right.  The objection is sustained.

8    Mr. Haas --

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  -- you can't refer to the jury in that

11   way.

12             And I'll remind the jury that the truth or falsity of

13   these beliefs is not at issue in this case.  It's the fact

14   that the government alleges the defendant held certain beliefs

15   that can go to motive and intent.

16             THE DEFENDANT:  The government pointed out that in

17   these messages that I've sent that a true threat includes

18   surrounding communications.  Mr. Jonas said that during his

19   opening speech right here today that a true threat involves

20   the surrounding communications.  Threats matter.  Threats are

21   important.  Threats are very dangerous, but the biggest threat

22   you will ever see in your life is blacked out from those

23   communications that I sent.  They don't want you to see the

24   real threat because it's so disgusting that it will change

25   your opinion.

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 63 of 96 PageID #:2282
Closing argument - defendant
583

1           MR. JONAS:  Objection.

2           THE COURT:  Sustained.

3           THE DEFENDANT:  In the elements of this case,

4  predisposed to commit a crime or induced, if the agents hadn't

5  approached me attempting to chill my protected speech, this

6  never would have happened.  If they didn't call me and come to

7  my job site and snicker at me and poke at me, and when I told

8  them beliefs, I said I believe white people have no business

9  in that desert.

10          He said, "What do Palestinians' passports say?"

11  That's telling me he's pro-Israel.  He was telling me his

12  beliefs and trying to incite me to lash out at him.  And I

13  did.  I probably shouldn't have, but I did.  But that's not a

14  crime.  And I wasn't arrested that day because it was not a

15  crime.  I did not break the law.

16          And I had not broken the law up until then because I

17  was never -- never convicted, never arrested for any of this.

18  They never had a real crime.  They were coming around

19  attempting to chill my protected speech because I exposed the

20  people who pay their bills, which if you look at this, if they

21  are benefiting from these people, they're conspiring against

22  American citizens.  It's a RICO charge.

23           MR. JONAS:  Objection.

24           THE DEFENDANT:  It's a protection racket.

25           THE COURT:  Sustained.  There's no evidence on that.

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 64 of 96 PageID #:2283
Closing argument - defendant
584

1    The jury will disregard the last sentence.

2              THE DEFENDANT:  In the elements that they're talking

3    about, predisposed to commit a crime, induced, the first FBI

4    officer that came and spoke to me was way back in 2006.  And

5    he did -- he did -- he did make a seizure.  He said, "You

6    don't have a choice.  You have to come and meet me."

7              And I did without a problem.  And we sat in

8    McDonald's and talked.  And after ten minutes he said, "I'm

9    going to close this case.  You're not a threat."

10             MR. JONAS:  Objection.

11             THE COURT:  Sustained.

12             MR. JONAS:  Arguing facts not in evidence.

13             THE COURT:  Sustained.  The jury will disregard that

14   last sentence.

15             THE DEFENDANT:  If you notice in Government's

16   Exhibits -- as I had mentioned, Government's Exhibits 56, 58,

17   59, 60, 61, and 63, every one of them mentions telling the

18   truth, being stopped from telling the truth.  Telling the

19   truth is what the First Amendment is about:  To expose crime

20   and wrongdoing within our government.  That's what it's really

21   about.

22             THE COURT:  Mr. Haas, can you bring your mask up

23   again?

24             THE DEFENDANT:  That's what the First Amendment is

25   truly about, is exposing crime.  And we have every right to

Closing argument - defendant

585

1    defend that at all costs, especially when you're dealing with

2    people like this.  And these are the people who I'm exposing.

3    And my First Amendment is the most powerful weapon I have

4    against people with guns and nuclear weapons and they run our

5    banks.  They own our countries.  And it's the only weapon I

6    have, is my speech and a keychain.  That's it.

7           And I'm arguing with these people online exposing

8    them and their families, their ancestors, who they are and

9    what they do.  And I put my life on the line with my First

10   Amendment.  And this is how I'm repaid for it.

11          Mr. Jonas here said violence is my response,

12   violence.  Again, the most violent thing in the world you will

13   ever see is blacked out from the context of this evidence

14   against me.  They have not one true threat against me,

15   allegedly true threat, before Officer Noordeloos and Rochowiak

16   came to my house and drew weapons on me and told me to get on

17   the ground without charges or a warrant and no probable cause.

18   They had no true threat.  They had no reason to be there

19   except to intimidate me.  Intimidation is using force or

20   threat of force or violence for a political end.

21          He came representing a political party, the United

22   Nations Ambassador Nikki Haley, who has been beholden to the

23   State of Israel.  And she demonstrates that over and over

24   again.  And those are the same people who want to disarm us.

25   And I showed you the United Nations document.

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 66 of 96 PageID #:2285
Closing argument - defendant
586

1          MR. JONAS:  Judge, I'm going to object to that last

2     line.

3          THE COURT:  Sustained as to the last sentence.

4          THE DEFENDANT:  Mr. Kostuchowski came to my job site,

5     and he explained that -- he showed me his credentials and

6     explained why he was there.  They played the video again

7     today.  And I'd like you to watch the first 30 seconds of it

8     when he comes up.  I'm asking him why he's there multiple

9     times.  Why would I have to do that if he told me why he was

10    there and showed me his credentials?  I'd like you to think

11    about that.

12         Can you guys please play that video?  I forgot to

13    make a note of what clip it is, the job site video.

14         THE COURT:  Mr. Haas, you'd have to specify what the

15    exhibit is, please, as we agreed on yesterday.  The jury will

16    have an exhibit list as well which has a file name which

17    specifies --

18         THE DEFENDANT:  I don't know what the file name is.

19    It's the video at the job site.  They just played it ten

20    minutes ago.  They know which video it is.

21         THE COURT:  Let's take a sidebar.

22       (Proceedings heard at sidebar:)

23         THE DEFENDANT:  Your Honor, when they played the

24    video, I was looking for a number on the screen, and there was

25    no exhibit number on the screen.  There's no title for the

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 67 of 96 PageID #:2286
Closing argument - defendant
587

1  exhibit on this list.  So how am I supposed to know what their

2  exhibit is?  I don't --

3        THE COURT:  Again, Mr. Haas, as we discussed

4  yesterday, they're just a conduit for playing the exhibits

5  that you identify.  The list actually does have file names

6  that are descriptive.  And all of the orders leading up to

7  today on exhibit charts have been descriptive on that.

8        Having said that, does the government have any

9  objection to playing that?  Which one is it?

10        MS. KELLY:  It's Government Exhibit 76.

11        THE COURT:  I'm sorry.  Can you speak into the mike

12  there?

13        MS. KELLY:  Government Exhibit 76.

14        THE COURT:  All right.  Thank you.

15     (Proceedings heard in open court:)

16        THE DEFENDANT:  I'd like the government to play

17  Exhibit 76.

18        THE COURT:  Okay.  Well, the government did identify

19  it for you in the sidebar.

20        THE DEFENDANT:  Uh-huh.

21        THE COURT:  And I thank them for that.  Please go

22  ahead and play it.

23     (Government Exhibit 76 played in open court.)

24        THE DEFENDANT:  Can we please start that over because

25  that's the important part.

Closing argument - defendant

588

1          (Government Exhibit 76 played in open court.)

2               THE COURT:  I'm sorry.  That's my fault.

3               THE DEFENDANT:  Can we start it over one more time?

4               THE COURT:  Yes.  Please do start over.  It was my

5     fault.

6               THE DEFENDANT:  And leave it paused for one second.

7     I'd also like you to note when I said, "Why are you here," he

8     said, "Let's just be friends."  He did not say he was there

9     for an investigation.  He did not say he was there because I

10    made a threat.  He said, "Let's just be friends."  And he's

11    laughing at me with a smug smile on his face, intimidating me,

12    provoking me --

13              THE COURT:  Okay.  How long is the clip?

14              THE DEFENDANT:  -- inciting me.

15         Less than a minute, 30 seconds.

16              THE COURT:  I'm asking the government since they have

17    the exhibit.

18              MS. KELLY:  Judge, I think it's roughly 40 seconds.

19              THE COURT:  Just go ahead and play the whole thing.

20         (Government Exhibit 76 played in open court.)

21              THE DEFENDANT:  You can stop that now.

22         It's very obviously that he never showed me any

23    credentials or why he was there.  He walked up and started

24    harassing me at a job site.  The machine I was sitting on cost

25    $300 a day.

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 69 of 96 PageID #:2288
Closing argument - defendant
589

1          MR. JONAS:  Objection, your Honor.  There's no facts

2     to support that statement.

3          THE COURT:  Sustained.  The jury will disregard the

4     last remark.

5          THE DEFENDANT:  Can we show Government Exhibit 54?

6          THE COURT:  All right.  I'll ask the government to do

7     that.

8          THE DEFENDANT:  It says, "The next fed that plays

9     billy bad ass with me."  That reminds me of a sign I saw this

10    morning that says, "I can't breathe."

11         MR. JONAS:  Objection.

12         THE COURT:  Sustained.  There's no relevance to that

13    in this case.

14         THE DEFENDANT:  Barry Jonas here said enough is

15    enough.  Exactly.  Enough is enough from these people against

16    American citizens.  Violence is my response.  Barry Jonas just

17    said that.  Violence is my response to these things.  Of

18    course, violence is my response.  Anybody who sees these

19    things should be outraged that our government -- it's called

20    misprision of treason, hiding treason.

21         MR. JONAS:  Objection.

22         THE COURT:  Sustained on the legal definition.

23         THE DEFENDANT:  Sorry.  Violence is my response.  Why

24    is violence blacked out then?

25              Barry Jonas is inventing this intent, that I'm doing

1    it to impede an investigation.  I have no problem with an

2    investigation if they actually asked me legitimate questions

3    and listened to the truth.  I would help them with their

4    investigation and go get real terrorists.

5         As a matter of fact, I mentioned that, but you're not

6    seeing those messages.  I've said it to every officer that's

7    ever come around.  That's why I show them these photos, all

8    this proof, all these verses from the Jewish belief systems.

9    I want people to see it including the federal government.

10        They don't do anything about it.  They continue to

11   harass me, but they don't investigate these photos of these

12   men in the World Trade Center on the 91st floor.  I'd like to

13   know who they are and why they were there removing a window

14   three weeks before the building collapsed.

15        MR. JONAS:  Your Honor, I'm going to object about,

16   there's no evidence of investigation by the government one way

17   or the other.

18        THE COURT:  Sustained.  The jury will disregard the

19   last two sentences.

20        THE DEFENDANT:  I'm finished, your Honor.

21        THE COURT:  All right.  Rebuttal?

22        THE DEFENDANT:  Thank you, Jury.  I appreciate

23   your --

24        MS. KELLY:  Your Honor, may I go into a brief sidebar

25   before I begin?

1          THE COURT:  All right.

2      (Proceedings heard at sidebar:)

3          MS. KELLY:  Your Honor, it may be appropriate --

4          THE COURT:  Could you pull the mike a little closer?

5          MS. KELLY:  Your Honor, the defendant in his closing

6   argument repeatedly referred to redactions despite your

7   Honor's order that he was not to do that.

8          THE DEFENDANT:  Your Honor, Mr. Jonas was --

9   specifically said "surrounding communications."  That is a

10  surrounding communication.  It's the remainder of related

11  writings, and it was excluded after I pointed that out

12  multiple times.  I want this on the record.  Surrounding

13  communications, he said it.

14         THE COURT:  Okay.  We have gone over this a couple of

15  times, Mr. Haas.  Actually, more than a couple of times both

16  before trial and during trial.

17         And so the government is asking to, I guess,

18  reinstruct the jury.

19         MS. KELLY:  Correct.

20         THE COURT:  Because I instructed them earlier about

21  the redactions and that I authorized them and they're not to

22  consider the fact that they are redacted.

23         MS. KELLY:  That's correct.

24         THE COURT:  Okay.  I'll give that instruction.  And

25  then you're going to go right into your rebuttal, correct?

Rebuttal argument - government

1          MS. KELLY:  Yes, your Honor.

2          THE COURT:  Okay.

3      (Proceedings heard in open court:)

4          THE COURT:  All right.  Ladies and gentlemen, before

5  the government begins its rebuttal argument, I just want to

6  instruct you again as I did earlier that on the exhibits that

7  you saw where there are redactions, there's black that is

8  blocking out certain portions of those exhibits, those are

9  redactions that the Court authorized, and they have no bearing

10 on your decision in this case.

11         All right.  Ms. Kelly?

12         REBUTTAL ARGUMENT ON BEHALF OF THE GOVERNMENT

13         MS. KELLY:  Ladies and gentlemen, this case is not

14 about a disagreement over religion.  It's not a case about

15 defendant's beliefs about government conspiracies.  And it's

16 also not a case about a statement someone made online to his

17 friend that's separate and apart from this case.  Defendant is

18 charged in this matter because he used words to threaten

19 repeatedly Task Force Officer Joe Kostuchowski and other

20 people.  He used those words to intimidate and to retaliate,

21 and it's his own words and his own actions that led him to

22 this courtroom.

23         Defendant tried to tell you that he was feeling

24 threatened, but you can see from the evidence it's the

25 opposite.  Defendant was on the offensive.  He was mad at law

Rebuttal argument - government

593

1    enforcement before Joe Kostuchowski ever stepped foot near

2    that job site.  He told you that he was.  He told you he was

3    angry that State Department Agent Dave Noordeloos had come to

4    see him over a year before he saw Joe Kostuchowski, but yet

5    defendant held this anger and held this hatred toward law

6    enforcement and went online and made post after post about not

7    only hurting law enforcement but Jewish people, families of

8    law enforcement, and families of Jewish people.  He was on the

9    attack, and he had been on the attack long before Joe

10   Kostuchowski went to talk to him about that complaint that the

11   FBI had received from the Simon Wiesenthal Center.

12           Mr. Haas talked to you about Government Exhibit 74.

13   This was the United Nations document that he showed.  But read

14   the words above that document:  "Lots of feds, federal

15   officers, State Department, APAC, Jews will be killed when

16   Americans see this Jewish trash plan.  I'm okay with killing

17   feds.  As a matter of fact, I am going to make this happen.

18   They have met their ending here."

19           Again, he was on the attack.  He was making the

20   threats.  He was talking about killing people.  It was not the

21   other way around.  It never was the other way around.

22           How did the defendant react when Joe Kostuchowski

23   came to meet with him?  You saw from the videos that we played

24   during the trial, he got angry.  He used profanity.  He called

25   Joe Kostuchowski names.  And what did Joe Kostuchowski do?  He

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 74 of 96 PageID #:2293
Rebuttal argument - government
594

1  drove away.

2        And then after Joe Kostuchowski drove away, defendant

3  started with the missives, the texts, the avalanche of texts

4  that occurred over a two-day period.  Mr. Jonas showed you

5  those texts talking about, "You should be afraid to walk out

6  your door.  Take off your gun and badge and meet true evil."

7        Again, that's someone on the attack.  Defendant

8  initiated those contacts repeatedly.  And he didn't just stop

9  at the text messages which were numerous and unrelenting.  He

10  started leaving Joe Kostuchowski the voicemail messages.  And

11  when you hear those voicemail messages, you're going to hear

12  somebody who was not afraid of Joe Kostuchowski.  It's exactly

13  the opposite.  He was threatening Joe Kostuchowski including

14  that voicemail message that we charged in Count 4 that I'll

15  play.  This is a voicemail left on May 11th, days after Joe

16  left that job site.

17        (Said audio recording played in open court.)

18        MS. KELLY:  The defendant told Joe Kostuchowski he

19  needs a bullet in his head.  He did it to intimidate, to

20  retaliate, and to frighten Joe Kostuchowski, and he did.  Joe

21  Kostuchowski talked to you about the fear he felt for himself

22  and his family.  And that's what defendant wanted.  He wanted

23  Joe to believe that he should be afraid of the defendant, that

24  the defendant was going to do something to him in retaliation

25  for simply coming to talk about a complaint that the FBI had

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 75 of 96 PageID #:2294
Rebuttal argument - government
595

1    received from the public.

2            Defendant told you that he felt harassed in some way

3    by law enforcement, but he skipped a step in the timeline.

4    The reason that Dave Noordeloos went to talk to him was

5    because of the comments that defendant made on Nikki Haley's

6    public Instagram page.  And there's no dispute that he made

7    comments on her Instagram page.

8            And as a result of those comments, Dave Noordeloos

9    came to talk to him.  And you've heard the recordings.  You

10   will have a chance to watch them again.  Dave Noordeloos

11   repeatedly asked defendant to dial it back, tone it down, stop

12   threatening people.  They had a conversation, and Dave

13   Noordeloos left and never spoke to the defendant again after

14   that, but yet defendant started launching into these threats

15   online.  And he persisted in doing so for months and months

16   after this interview talking about cutting throats, killing

17   families, he's going to get feds, months after Dave Noordeloos

18   left.

19           Dave Noordeloos didn't present any threat or danger

20   to the defendant.  It was quite the contrary.  It was

21   defendant who is expressing his intent to harm other people --

22           THE DEFENDANT:  Your Honor, can we have a sidebar

23   real fast?

24           THE COURT:  All right.

25       (Proceedings heard at sidebar:)

1          THE DEFENDANT:  I'd like Ms. Kelly to point out to

2   the jury that those comments about hurting people's families

3   were not text messages sent to anyone.  They were internet

4   posts on Russian social media.  She's making it sound like

5   they were sent to these people, text messages, that I'm going

6   to kill families and cut people's throats.  Not one of those

7   was sent to a telephone.  They were all online.  She's mixing

8   the charges up.

9          THE COURT:  Ms. Kelly?

10         MS. KELLY:  I think I said he launched into attacks

11  online.

12         THE COURT:  There's -- it is fair argument.  And she

13  did not imply that you sent it directly to others instead of

14  posting on vk.com.  So the objection is overruled.

15      (Proceedings heard in open court:)

16         THE COURT:  All right.  You may resume.

17         MS. KELLY:  Defendant launched into attacks online

18  with the intent to make a threat and with explicit

19  descriptions about how he was going to carry out those

20  threats.  You've seen the posts now multiple times.  You'll

21  see them again.  The words leap right off the page.  You can

22  apply your common sense and see what he said.  And you know

23  from the evidence why he said it.  He said it because he was

24  angry, and he said it to intimidate and to retaliate.

25         Then after Joe left the job site, it didn't stop

Rebuttal argument - government

597

1    there.  He sent the text messages.  He left the voicemail

2    messages.  There was no evidence that Joe Kostuchowski

3    responded back.  On the contrary, everyone agreed Joe never

4    responded.  But he kept the threats and the voicemails going.

5         That's how you know that defendant wasn't provoked.

6    That's how you know that defendant was predisposed to doing

7    this.  And that's how you know there was no entrapment.  There

8    was absolutely no evidence of entrapment in this case.  The

9    evidence shows that that switch was flipped in defendant's

10   mind long before Joe Kostuchowski ever went to Ottawa,

11   Illinois, to meet with the defendant.

12        The defendant also talked with you about the First

13   Amendment and how he cares about the First Amendment.  We all

14   care about the First Amendment.  The issue that you're being

15   asked to decide is embodied in the jury instructions that you

16   will receive.  And based on those instructions and the

17   elements of the offense, the defendant made true threats.  He

18   made them repeatedly online, and he made them in his internet

19   posts.

20        Defendant talked to you about a couple of exhibits.

21   And I'd like to talk to you a little about what else is

22   contained in those exhibits.  He mentioned Exhibit 74.  Please

23   read the rest of the language as I read.  He also mentioned

24   Exhibit 54.  This is the exhibit where defendant is holding

25   the knife in his hand.  Why else is he holding a knife in his

Case: 1:19-cr-00486 Document #: 264 Filed: 09/11/20 Page 78 of 96 PageID #:2297
Rebuttal argument - government
598

1    hand and saying that, "The next fed that plays billy bad ass,

2    I will slither behind like a fucking snake and cut to the

3    spine," other than to threaten law enforcement?  No reason for

4    that.  You can apply your common sense in looking at this

5    picture of a hand with a knife in the context in the

6    surrounding communications.

7            Defendant talked a little bit about Joe Kostuchowski

8    not displaying credentials and seems to argue that Joe

9    Kostuchowski didn't do that, but there's no dispute that

10   defendant knew that Task Force Officer Kostuchowski was

11   associated with the FBI.  So there's no dispute that defendant

12   understood he was federal law enforcement, yet he continued to

13   make threats and persisted in attempting to intimidate and to

14   retaliate.

15           The evidence in this case shows beyond a reasonable

16   doubt that defendant's graphic, horrific statements on vk.com

17   were true threats.  The evidence also shows beyond a

18   reasonable doubt that defendant made true threats directed to

19   Joe Kostuchowski knowing that his statements were -- would be

20   perceived as true threats and with the intent to intimidate

21   and to retaliate against Joe Kostuchowski on account of

22   performing his official duties.

23           Defendant is guilty, and we ask that you return a

24   verdict of guilty on all counts.

25           THE COURT:  Okay.  A couple final instructions for

1    you, ladies and gentlemen.  Once you are all in the jury room,

2    the first thing you should do is choose a presiding juror.

3    The presiding juror should see to it that your discussions are

4    carried out in an organized way and that evidence has a fair

5    chance -- everyone has a fair chance to be heard.  You may

6    discuss the case only when all jurors are present.

7            If you need to communicate with me while you are

8    deliberating, send a note through the court security officer.

9    The note should be signed by the presiding juror or by one or

10   more members of the jury.  To have a complete record of this

11   trial, it is important that you do not communicate with me

12   except by a written note.  I may have to talk to the lawyers

13   and to Mr. Haas about your message, so it may take me some

14   time to get back to you.  You may continue your deliberations

15   while you wait for my answer.

16           If you send me a message, do not include the

17   breakdown of any votes you may have conducted.  In other

18   words, do not tell me that you are split 6-6 or 8-4 or

19   whatever your vote happens to be.

20           The verdict must represent the considered judgment of

21   each juror.  Your verdict, whether it is guilty or not guilty,

22   must be unanimous.  You should make every reasonable effort to

23   reach a verdict.  In doing so, you should consult with each

24   other, express your own views, and listen to your fellow

25   jurors' opinions.  Discuss your differences with an open mind.

1    Do not hesitate to reexamine your own view and change your

2    opinion if you come to believe it is wrong, but you should not

3    surrender your honest beliefs about the weight or effect of

4    evidence just because of the opinions of your fellow jurors or

5    just so that there can be a unanimous verdict.

6           The 12 of you should give fair and equal

7    consideration to all the evidence.  You should deliberate with

8    the goal of reaching an agreement that is consistent with the

9    individual judgment of each juror.  You are impartial judges

10   of the facts.  Your sole interest is to determine whether the

11   government has proved its case beyond a reasonable doubt.

12          All right.  A couple other notes.  First, the trial

13   day usually goes to 4:30.  And so if you're not done as of

14   4:30 with your deliberations, that will conclude your day, and

15   you would come back tomorrow again between 8:00 and 8:30 and

16   then you start at 9:00 o'clock.  Your deliberations would

17   start at 9:00 o'clock.  It is completely up to you, though,

18   whether you finish today or tomorrow, but if you're not done

19   as of 4:30, then you do have to return tomorrow.

20          Now, it's important that if -- as I just said, that

21   all 12 of you have to be in the jury room deliberating at the

22   same time.  You can't have subsets of deliberation.  So for

23   example, I know it's unlikely that many of you are taking

24   public transportation, but if you are taking public

25   transportation and two or three of you happen to commute in

1    together, for example, you can't discuss the case because it's

2    not 12 of you in that ceremonial courtroom.

3         And the same goes for, if you arrive in the morning

4    if you're still deliberating tomorrow and some of you get here

5    earlier, do not start discussing the case until it's all 12 of

6    you together in the ceremonial courtroom.

7         Now, I've been saying 12.  And so as you probably

8    suspected, two of you are alternate jurors.  And that's

9    Ms. Fixari and Ms. Lakich.  Now, what that means is I am

10   provisionally releasing you.  That's just a fancy way of

11   saying you will not start out deliberating with the jurors,

12   and you may go home as soon as I get the jury starting --

13   started with deliberations, but I instruct you to still

14   refrain from researching the case, the facts, the law, the

15   parties.  Refrain from communicating about the case with

16   anyone, even between the two of you.  And don't let anyone

17   communicate with you about the case because it is -- it's

18   always possible that we may need one of you or both of you to

19   replace a juror.  And it doesn't always happen, but it's

20   possible.

21        And so please continue to follow those instructions.

22   And, of course, we'll let you know, if we don't bring you back

23   in, when the jury has rendered a verdict so that then you are

24   free from those instructions.

25        All right.  So what I'm going to do now is the court

1    security officers will bring you back to the deliberations

2    room.  I'll join you in there because I have to play a short

3    tutorial that teaches you how to display the evidence within

4    the courtroom.  And I'll say a few words about kind of the

5    physical layout of the deliberations room.

6              And we'll also bring in for you 12 copies of the jury

7    instructions, the one official verdict form, 12 copies of the

8    indictment, and 12 copies of the list of exhibits.  All right.

9    So all -- oh, I'm sorry.  We do need to administer an oath to

10   the court security officer.

11             So if you could do that.

12             THE CLERK:  Will you both please raise your right

13   hand?

14        (Court security officers sworn.)

15             THE CLERK:  Thank you.

16             THE COURT:  All rise.

17        (Recess from 11:26 a.m. to 12:24 p.m.)

18

19

20

21

22

23

24

25

603

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3    UNITED STATES OF AMERICA,           )
                                          )
 4               Plaintiff,               )
                                          )
 5               v.                       )   No. 19 CR 00486
                                          )
 6    ROBERT ANTHONY HAAS,                )   Chicago, Illinois
                                          )   August 6, 2020
 7               Defendant.               )   12:24 p.m.

 8                              VOLUME 4

 9                       TRANSCRIPT OF PROCEEDINGS

10         BEFORE THE HONORABLE EDMOND E. CHANG, and a Jury

11    APPEARANCES:

12    For the Plaintiff:        HON. JOHN R. LAUSCH, JR.
                                United States Attorney
13                              BY:  MS. ERIN E. KELLY
                                     MR. BARRY JONAS
14                              Assistant United States Attorneys
                                219 South Dearborn Street, Suite 500
15                              Chicago, Illinois 60604
                                (312) 353-5300
16
      For the Defendant:        MR. ROBERT ANTHONY HAAS,
17                              Pro se;

18    For the Defendant as      BEDI & SINGER, LLP
      standby counsel:          BY:  MS. DENA M. SINGER
19                              53 West Jackson Boulevard
                                Suite 1505
20                              Chicago, Illinois 60604
                                (312) 525-2017
21

22    Court Reporter:          Judith A. Walsh, CSR, RDR, F/CRR
                                Official Court Reporter
23                              219 South Dearborn Street, Room 2118
                                Chicago, Illinois 60604
24                              (312) 702-8865
                                judith_walsh@ilnd.uscourts.gov
25
```

1    (Proceedings heard in open court.  Jury out.)

2         THE COURT:  Court resumes in session.

3         19 CR 486.  Since we did take a break, let's just get

4    appearances again for the government.

5         MS. KELLY:  Erin Kelly for the United States.

6         MR. JONAS:  Barry Jonas for the United States.

7         THE DEFENDANT:  Robert Haas.

8         MS. SINGER:  Dena Singer.

9    (Pause.)

10        THE COURT:  Can you just make sure they're turned on?

11        MS. KELLY:  My green light is on.

12        THE COURT:  All right.  Great.  I did read it to the

13   parties just a few minutes ago off the record so they could

14   start thinking about it.  Question number one was, "Was Haas

15   banned from Facebook and Instagram, and was that admitted into

16   evidence?"

17        Question two asks, "May we have one highlighter per

18   juror?"  And it's signed literally, "Jury foreperson."  It

19   does not have a name attached to it.

20        Okay.  So what's the government's take?

21        MR. JONAS:  Judge, for your information, there was,

22   part of the recordings played with Agent Noordeloos, I believe

23   the defendant told Agent Noordeloos that he was banned from

24   Facebook.  Having said that, I don't think it's something the

25   Court should be pointing out.  I think the response should

1    simply be, "You have all the evidence that's been admitted."

2              THE COURT:  Mr. Haas?

3              THE DEFENDANT:  I was banned for Holocaust denial and

4    having multiple accounts.  I -- I think the jury should know

5    that if it's in the -- if it's in the evidence.

6              THE COURT:  Okay.  So I think the key here is to --

7    obviously, number one, put in any fact that is not already in

8    evidence but actually, secondly, whether it's in evidence or

9    not, it's not appropriate to remind the jury whether it is or

10   it isn't.  And then what that engenders is like a running Q

11   and A about what the facts are.  And that's not appropriate

12   during jury deliberations, of course.

13             And so what I propose to tell them is to say, "In

14   response to the first question which related to Facebook and

15   Instagram, you must rely on your memory of the evidence,"

16   period.  And then, of course, that we'll provide highlighters

17   for each juror.

18             So do you have any objection to that from the

19   government?

20             MR. JONAS:  No, your Honor.

21             THE COURT:  Mr. Haas?

22             THE DEFENDANT:  No, your Honor.

23             THE COURT:  Okay.  That will be the response.  All

24   right.  Thanks.

25         (Recess from 12:26 p.m. to 12:54 p.m.)

1          (Proceedings heard in open court.  Jury out.)

2               THE COURT:  The court resumes in session.  19 CR 486,

3     United States versus Haas.  Just appearances once again,

4     please.

5               MS. KELLY:  Erin Kelly for the United States.

6               MR. JONAS:  Barry Jonas for the United States.

7               THE DEFENDANT:  Robert Haas.

8               MS. SINGER:  Dena Singer.

9               THE COURT:  All right.  Good afternoon again.

10              Okay.  Another note.  This is probably the kind of

11     thing I would have handled by phone, but we do need to bring

12     Mr. Haas into court for each one.

13              It asks, "Can we have clarification on what these

14     are?"  And then it says, "Title 18, United States Code,

15     Section 115(a)(b)."  And then it's got, "Title 18, United

16     States Code, Section 875(c).  Listed at bottom of each count,

17     is there a definition of those?"  And it's signed, it looks

18     like a squiggly, "Jury foreperson."

19              So I believe what the jury's referring to is on the

20     bottom of the indictment, each count, there's a "in violation

21     of," and then it lists out the statutory citation.  So I guess

22     they're just being extra careful.

23              What I propose to tell them is:  "In response to your

24     question, those are references to the federal criminal laws

25     alleged to be violated in each count, but the jury

1    instructions do already provide the elements of those crimes

2    and the definitions of the terms in those crimes."

3              Any objection from the government?

4              MR. JONAS:  No, your Honor.

5              THE COURT:  Mr. Haas?

6              THE DEFENDANT:  No, your Honor.

7              THE COURT:  All right.  Thank you.

8         (Recess from 12:58 p.m. to 2:10 p.m.)

9         (Proceedings heard in open court.  Jury out.)

10             THE COURT:  The court resumes in session.  19 CR 486,

11   United States versus Haas.

12             Let's get appearances again for the government.

13             MS. KELLY:  Erin Kelly for the United States.

14             MR. JONAS:  Barry Jonas for the United States.

15             THE DEFENDANT:  Robert Haas.

16             MS. SINGER:  Dena Singer.

17             THE COURT:  All right.  Good afternoon.  I received a

18   note which says as follows.  It says:  "First, we have

19   completed deliberation and voted accordingly," which I

20   interpret as they have a verdict.  And then it says:  "Second,

21   we are concerned about our general safety as the defendant has

22   reviewed the juror survey forms and has our name, hometown,

23   etcetera.  What, if any, security protocols are in place?  Who

24   do we contact if we are subject to any threats from

25   defendant?"  And it's signed, "Jury foreperson."

1    So as to the second question, this does come up from

2  time to time after a trial.  What I usually tell the jurors is

3  to call 911 if there's an immediate threat.  And if it's not

4  imminent, they can call the investigating agency on the case.

5  And I do plan to tell them that Mr. Haas does not have the

6  juror forms anymore.  He gave them back to us.

7    So is there any objection to that -- and I'm not -- I

8  don't plan on doing this in writing.  I would just tell them

9  that.  Is there any objection to that from the government?

10    MS. KELLY:  No, your Honor.

11    THE COURT:  Mr. Haas, do you have any comments?

12    THE DEFENDANT:  No, your Honor.

13    THE COURT:  Okay.  Let's get the jury.

14    (Proceedings heard in open court.  Jury in.)

15    THE COURT:  All right.  Please be seated.

16    Okay.  Ladies and gentlemen, I understand you have a

17  verdict.  And with my Sherlock Holmes deduction skills, it

18  looks like Mr. Burger has the verdict form.

19    So let me explain the process here.  In a moment,

20  I'll ask you to hand the verdict form to the court security

21  officer, and then he'll hand it to me.  Then I will do what's

22  called publish the verdict.  And that means that simply I'll

23  just read out loud what the verdict is.

24    After publishing it, the jury will then be polled by

25  the courtroom deputy.  And what this consists of is that he'll

1    call each of you up one by one by name.  He'll ask you to

2    stand, and then he will ask you, "Was this and is this now

3    your verdict," all right, what I just said.  So we're just

4    confirming that each of you voted in favor of the verdict as

5    I've published it.  Okay.  So then publish and then poll.

6            All right.  Please hand the verdict to the court

7    security officer.

8            All right.  The verdict is as follows:  "We, the

9    jury, find the defendant, Robert Anthony Haas, guilty on all

10   13 counts."  The signature page is signed by each of the

11   jurors, and it is dated today.  All right.

12           Mr. Wing, please poll the jury.

13           THE CLERK:  Elizabeth Reihl, was this and is this now

14   your verdict?

15           JUROR REIHL:  It is.

16           THE CLERK:  Claudie Phillips, was this and is this

17   now your verdict?

18           JUROR PHILLIPS:  It is.

19           THE CLERK:  Pei Li, was this and is this now your

20   verdict?

21           JUROR LI:  Yes.

22           THE CLERK:  Jonathan Reyes, was this and is this now

23   your verdict?

24           JUROR REYES:  Yes.

25           THE CLERK:  Amanda Pollock, was this and is this now

610

1    your verdict?

2         JUROR POLLOCK:  Yes.

3         THE CLERK:  Jennifer Kriss-Poncin, was this and is

4    this now your verdict?

5         JUROR KRISS-PONCIN:  Yes, sir.

6         THE CLERK:  Guadalupe Zavala, was this and is this

7    now your verdict?

8         JUROR ZAVALA:  Yes.

9         THE CLERK:  Justin Burger, was this and is this now

10   your verdict?

11        JUROR BURGER:  Yes, sir.

12        THE CLERK:  Julia Fears, was this and is this now

13   your verdict?

14        JUROR FEARS:  Yes.

15        THE CLERK:  Elizabeth Boyd, was this and is this now

16   your verdict?

17        JUROR BOYD:  Yes.

18        THE CLERK:  Laura Dietz-Pfister, was this and is this

19   now your verdict?

20        JUROR DIETZ-PFISTER:  Yes.

21        THE CLERK:  Asra Muben, was this and is this now your

22   verdict?

23        JUROR MUBEN:  Yes.

24        THE CLERK:  And so say you all?

25        THE JURY:  Yes.

1          THE COURT:  All right.  Ladies and gentlemen, let me

2     express my deepest thanks for your service.  This was the

3     first jury trial that has been held in this courthouse since

4     early March.  It's the first one after the pandemic.  So you

5     have shown extraordinary dedication to serving your community.

6     It makes me proud to be an American.

7          I am going to ask you to just extend your service a

8     bit longer so that I can meet you back in the ceremonial

9     courtroom.  I have a few things to take care of with the

10    parties here.  I want to give you a certificate of

11    appreciation which evidences your jury service.  I'll answer

12    what questions I can.  There are limits on what I can tell

13    you, but I also am going to solicit constructive criticism of

14    the process so that we know how to do this better going

15    forward as well.

16         All right.  So please do wait for me.  And I'll just

17    be a few minutes.  Thank you again.

18         All rise.

19       (Proceedings heard in open court.  Jury out.)

20         THE COURT:  All right.  Please be seated.

21         Okay.  Mr. Haas, so we're going to give out a

22    sentencing date first, and then I'll fill in some other

23    deadlines.

24         THE CLERK:  November 3rd at 1:30.

25         THE COURT:  Okay.  So Mr. Haas, there is such a thing

1   as posttrial motions under Federal Rules of Criminal Procedure

2   29 and 33.  If you want to file a motion like that, then you

3   can certainly continue to consult with Ms. Singer.  They are

4   usually due within 14 days after the verdict is issued.

5   However, I can extend the time.

6         So do you want me to extend the time, or do you think

7   you can prepare them, if you're going to file any, within the

8   14 days?

9         THE DEFENDANT:  I would like you to extend the time.

10         THE COURT:  Okay.  So let me ask this because it may

11   be relevant to how much time.  Are you trying to get the

12   sentencing as quickly as possible or --

13         THE DEFENDANT:  I am, but at the same time, I don't

14   have access.  I'm on quarantine now.

15         THE COURT:  Right.  That's true.  And I think they're

16   going to quarantine you for another 14 days.  So let's balance

17   this a little bit.  I might have to push the sentencing date

18   out to give you enough time to prepare these.  So let's do the

19   following.

20         The posttrial motions, instead of 14 days, let's make

21   them due September -- let's go for 14 right now.  Okay.  So

22   that's more than a month.  September 14.  It's a Monday.  Get

23   the government's response by September 28th.

24         THE DEFENDANT:  Excuse me, your Honor.

25         THE COURT:  Yes.

1       THE DEFENDANT:  Let's just forget the posttrial

2  motions and go with the sentencing.  The extension, forget the

3  extension.

4       THE COURT:  Okay.  It's your choice.  You may want to

5  confer with Ms. Singer on that.  If you change your mind, you

6  can file a motion to set a schedule, but it may have an impact

7  on the sentencing.  All right.  So November 3rd for the

8  sentencing.

9       The sentencing memoranda, I usually have simultaneous

10  briefs, but let's do this a little differently given Mr. Haas'

11  pro se status.  So we'll start with the government filing a

12  sentencing memo September 29.  Mr. Haas can respond by

13  October -- here, let me back it up a little bit, September 22.

14  The response by October 13.  Any reply by October 20.

15       Okay.  I am also going to have to confer with the

16  probation office to make sure these dates aren't so -- aren't

17  too aggressive.  So just look for the legal mail.  It might

18  change if the probation office can't do this in time.

19       Okay.  The other question I have, though, Mr. Haas,

20  is, do you want me to reappoint a lawyer for sentencing

21  purposes?

22       THE DEFENDANT:  I do.

23       THE COURT:  Okay.  Now, this would not be, again,

24  hybrid representation.  Like, if I appoint a lawyer for

25  sentencing, then that's the lawyer on the case.  You cannot

1    file pro se motions or briefs and so on.  And the lawyer will

2    be confined, as lawyers always are, to follow the rules of

3    ethics and the rules of criminal procedure and so on.

4         So you do want me to appoint a lawyer for you for

5    sentencing?

6         THE DEFENDANT:  Yes, your Honor.

7         THE COURT:  Now, Ms. Singer, are you willing to come

8    back in the case as now counsel of record for sentencing?

9         MS. SINGER:  Yes, your Honor.  Just for

10   clarification, though, is that for posttrial motions and

11   sentencing or just sentencing?

12        THE COURT:  You're free to confer with him on whether

13   he wants to file posttrial motions.  And if he does, then I'm

14   happy to have you work on those, too.

15        And so Mr. Haas, just to be clear, if Ms. Singer

16   becomes your attorney for sentencing purposes and then if you

17   change your mind and you want to file posttrial motions, she's

18   your lawyer so there's not -- again, it would not be hybrid,

19   you represent yourself for posttrial motions, she represents

20   you for sentencing.  She would be your lawyer.  So do you

21   understand those conditions?

22        THE DEFENDANT:  I do.

23        THE COURT:  Okay.  And if you're going to file

24   posttrial motions after talking to Mr. Haas, please as quickly

25   as possible file a motion to set a briefing schedule so that

1   we can square the dates.  All right?

2         MS. SINGER:  Your Honor, I would anticipate, if I'm

3   the lawyer, filing posttrial motions.

4         THE COURT:  That's fine.  If you want to set the

5   dates now, that's fine.  I just -- I think that's one of those

6   motions that the defendant probably does have control over in

7   terms of a yes or no but --

8         MS. SINGER:  I can -- I'm sorry.

9         THE COURT:  If you want to provisionally set a

10   schedule, I'm happy to do that.

11         MS. SINGER:  I mean, I'm happy to speak with him,

12   your Honor, and then I'll file a motion to extend if we need

13   to, but I don't even know, you know --

14         THE COURT:  So how much time do you want then?

15         MS. SINGER:  Well, why don't -- you can leave the

16   schedule as it is.  I'll speak with him between now and -- you

17   know, within the next few days about posttrial motions.  And

18   then I can file whatever I need to with the Court if I need to

19   request, you know, time.

20         THE COURT:  Okay.

21         MS. SINGER:  If you want to set the 14 days for the

22   posttrial motions now to be due and then if I need to extend

23   them, I can ask to extend them.

24         THE COURT:  Oh, I see.  All right.  So August 20 for

25   any Rule 29 and 33.  I will get the responses September 8th

1    and any replies by September 22.  Okay.  Ms. Singer is

2    reappointed.

3            Okay.  Anything else for the government?

4            MS. KELLY:  No, your Honor.

5            THE COURT:  Mr. Haas or Ms. Singer?  Mr. Haas?

6            THE DEFENDANT:  No, your Honor.

7            THE COURT:  Ms. Singer?

8            MS. SINGER:  Not at this time.

9            THE COURT:  All right.  Okay.  Thank you.

10       (Proceedings adjourned at 2:26 p.m.)

11                    *  *  *  *  *  *  *

12                  C E R T I F I C A T E

13       I, Judith A. Walsh, do hereby certify that the

14   foregoing is a complete, true, and accurate transcript of the

15   proceedings had in the above-entitled case before the

16   Honorable EDMOND E. CHANG, one of the judges of said court, at

17   Chicago, Illinois, on August 6, 2020.

18

19   /s/ *Judith A. Walsh, CSR, RDR, F/CRR*_____    September 11, 2020

20   Official Court Reporter

21   United States District Court

22   Northern District of Illinois

23   Eastern Division

24

25